**Karen RUSH, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 35A02–0709–CR–772.**

Court of Appeals of Indiana.

Feb. 19, 2008.

Jeremy K. Nix, Matheny, Michael, Hahn & Denman, Huntington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

---

1. Ind.Code § 35–46–1–8.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Karen Rush appeals her conviction for Contributing to the Delinquency of a Minor,[1] a class A misdemeanor. Specifically, Rush argues that her conviction must be reversed because the police officers' warrantless entry onto her property was unreasonable and no exigent circumstances existed. Rush further claims that the subsequent search of her residence violated her rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution because she had not consented to the search. As a result, Rush contends that the trial court erred in admitting the evidence that was seized following the police officers' warrantless search of her property. Finally, Rush argues that the evidence was insufficient to support the conviction. Finding no error, we affirm the judgment of the trial court.

### FACTS

On March 25, 2007, at approximately 12:15 a.m., Huntington County Sheriff's Deputy Chad Hammel and Indiana State Trooper Jamie Hotchkiss received a report of an underage drinking party at Rush's residence. As a result, Trooper Hotchkiss contacted other officers for assistance, requesting that they meet him in the identified neighborhood. When the officers arrived in Rush's subdivision, they parked their police vehicles and began walking toward Rush's house. At some point, the officers noticed a "young male" approach them. Tr. p. 70. However, the individual subsequently turned around and started to run. Deputy Hammel stopped the individual and asked whether "there was an underage drinking party going on [at Rush's

house]." *Id.* at 36, 47. After the suspected juvenile responded affirmatively, Trooper Matt Teusch continued walking toward Rush's house and approached a teenage boy who was leaning against a vehicle in Rush's driveway. As the teen ran toward Rush's backyard, Trooper Teusch chased him. Trooper Teusch detected the smell of alcohol on the youth's breath after stopping him.

At that point, some of the officers saw several empty beer cans in Rush's front yard. Trooper Teusch then heard some commotion in Rush's backyard and saw someone crawling out of Rush's basement window. The individual stopped after Trooper Teusch ordered him to do so. As the officers stood in the backyard, they looked through the basement window and noticed other suspected juveniles in Rush's house and beer and liquor containers. Trooper Hotchkiss then saw other juveniles run into Rush's house through the front door. As a result, he went around the house to intercept anyone who was attempting to flee.

Thereafter, several troopers knocked on Rush's back door. When Rush opened the door, she acknowledged to Trooper Hotchkiss that she was the homeowner. Rush then told the officers that they could come inside. Trooper Hotchkiss asked Rush if she knew what was going on, and she responded that she "saw a few beer cans but ... didn't think anything of it." *Id.* at 66. The officers then summoned the occupants from the basement for a "head count." *Id.* at 54. Trooper Hotchkiss then walked through the house and found three teenage girls hiding in the basement closet. Trooper Hotchkiss also saw an empty case of Keystone Light beer, empty beer cans, and a number of liquor bottles in the basement.

While Trooper Teusch was in the living room, he noticed that some of the individuals from the initial "head count" were missing. *Id.* at 74. Trooper Teusch then heard a noise upstairs and found one of the missing juveniles hiding in a closet. The officers subsequently administered portable breath tests to all of the individuals, which revealed that thirteen of them had consumed alcohol. Rush's seventeen-year-old daughter was one of those individuals.

As a result of the incident, the State charged Rush with contributing to the delinquency of a minor, a class A misdemeanor. Thereafter, Rush filed a motion to suppress, claiming that the officers lacked the authority to enter Rush's "curtilage, exceeding the areas upon which visitors would be expected to be invited." Appellant's App. p. 14. Rush also claimed that the police officers' warrantless entry and subsequent search of the premises violated her right to be free from unreasonable search and seizure pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Therefore, Rush alleged that the police officers improperly obtained the evidence during the investigation and subsequent search of her residence and that as a result, the evidence must be suppressed. The trial court denied the motion to suppress, and following a bench trial that concluded on August 14, 2007, Rush was found guilty as charged. She now appeals.

## DISCUSSION AND DECISION

### I. Entry Onto the Premises

Rush first contends that all of the evidence that the police officers obtained during their investigation was inadmissible because the police officers improperly entered her yard and the curtilage of her home. More specifically, Rush maintains that the officers' entry into "the curtilage of [her] home without probable cause and

without being in hot pursuit of a felon, and peering through Defendant's windows while in the rear of the home were all in violation of [her] rights under the Fourth Amendment to the United States Constitution." Appellant's Br. p. 6. Thus, Rush argues that the trial court erred in admitting "all evidence obtained after the officers entered the back of her property." *Id.* at 19.

We initially observe that the standard used to review rulings "on the admissibility of evidence is effectively the same whether the challenge is made by a pre-trial motion to suppress or by a trial objection." *Burkes v. State,* 842 N.E.2d 426, 429 (Ind.Ct.App.2006), *trans. denied.* We will not reweigh the evidence, and we consider the conflicting evidence most favorable to the trial court's ruling. *Id.* However, we will also consider any uncontested evidence in favor of the nonmovant. *Id.* We will affirm the decision if it is supported by substantial evidence of probative value. *Id.* Moreover, the trial court's ruling will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Gonser v. State,* 843 N.E.2d 947, 950 (Ind.Ct.App.2006).

The Fourth Amendment generally prohibits warrantless searches. *Edwards v. State,* 762 N.E.2d 128, 132 (Ind.Ct.App. 2002). The purpose of the Fourth Amendment is to protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Barfield v. State,* 776 N.E.2d 404, 406 (Ind.Ct. App.2002). The "touchstone of the Fourth Amendment is reasonableness," and reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

If a warrantless search is conducted, the burden is on the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Id.* That is, searches conducted without a warrant are per se unreasonable, subject to a few well-delineated exceptions. *Johnson v. State,* 766 N.E.2d 426, 432 (Ind.Ct. App.2002). Whether a particular warrantless search violates the guarantees of the Fourth Amendment depends upon the facts and circumstances of each case. *State v. Joe,* 693 N.E.2d 573, 575 (Ind.Ct. App.1998).

This court has determined that the protection afforded to curtilage is justified on the basis of familial and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most high. *Rook v. State,* 679 N.E.2d 997, 999–1000 (Ind.Ct.App.1997). However, the mere fact that a legitimate police investigation allows items within the curtilage to be seen does not automatically transform a warrantless observation or inspection into an unconstitutional search. *Trimble v. State,* 842 N.E.2d 798, 801 (Ind.2006). Moreover, our Supreme Court has determined that the existence of exigent circumstances falls within the exception to the warrant requirement. *Snellgrove v. State,* 569 N.E.2d 337 (Ind.1991). Such circumstances are present when: 1) a suspect is fleeing or likely to take flight in order to avoid arrest; 2) incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; and 3) hot pursuit or movable vehicles are involved. *Id.* at 340. In essence, the warrant requirement becomes inapplicable when the " 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Holder v. State,* 847 N.E.2d

930, 936–37 (Ind.2006) (quoting *Mincey v. Arizona,* 437 U.S. 385, 393–94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)).

As noted above, the police officers responded to a report that an underage drinking party was occurring at Rush's residence. Tr. p. 53. When the officers walked toward Rush's house, an individual—suspected to be underage—saw the officers and began to run away. *Id.* at 55. Once the suspected juvenile stopped in front of Rush's home, he told the officers that an underage drinking party was occurring inside. *Id.* at 36, 47. Shortly after that encounter, Trooper Teusch questioned another teenager, who had been leaning against a vehicle in Rush's driveway. Trooper Teusch testified that the youth smelled of alcohol. *Id.* at 71, 77.

Notwithstanding Rush's claim that the officers lacked the authority to enter her property, we note that Indiana Code section 7.1–5–7–7 defines a minor in possession of alcohol as a class C misdemeanor. After receiving the dispatch regarding the suspected drinking party, the officers reasonably believed that the teens were running from them because they had been drinking at Rush's house. Additionally, Trooper Hotchkiss entered Rush's yard to intercept the juveniles who were running from the house because he thought they may have been drinking at the party. Tr. p. 57–58.

When Trooper Teusch heard a commotion in Rush's backyard, he saw a juvenile climbing out of Rush's basement window. *Id.* at 71–72. When apprehending that individual, the officers looked in the basement window and noticed several juveniles, "open beer cans, beer containers," and a portable bar with several liquor bottles on it. *Id.* at 58, 60, 74.

In light of these circumstances, the trial court reasonably concluded that the police officers were lawfully on Rush's premises to investigate the suspected underage drinking party. As a result, neither the police officers' warrantless entry into Rush's yard or their subsequent observation of the beer and liquor containers through the basement window violated Rush's Fourth Amendment rights. Thus, we reject Rush's argument that the police officers' actions were improper. *See Trimble,* 842 N.E.2d at 801 (recognizing that a police officer's observation or inspection of contraband during the course of a legitimate investigation does not necessarily result in an unconstitutional search); *see also Kendall v. State,* 825 N.E.2d 439 (Ind.Ct.App.2005), *aff'd in part and vacated in part on other grounds* (holding that when a police officer observes something from an area where the officer is lawfully entitled to be, anything that is in "open view" may be observed without having to obtain a search warrant because making such "open view" observations does not constitute a search in the constitutional sense).

## II. *Search of the Residence*

In a related argument, Rush contends that her conviction must be reversed because the police officers' search of her home was improper. More specifically, Rush argues that "based on the totality of the circumstances, the warrantless search of [her] home without her consent was unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution." Appellant's Br. p. 6.

### A. *Fourth Amendment Claim*

▮ We acknowledge that while a search extending beyond the exigencies presented violates the Fourth Amendment, *Bryant v. State,* 660 N.E.2d 290, 301 (Ind. 1995), another well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *Krise v.*

*State*, 746 N.E.2d 957, 961 (Ind.2001). The scope of a consensual search is measured by its objective reasonableness. *Id.* at 964.

In this case, Rush told the police officers that she was the homeowner. Tr. p. 53, 73. Rush then specifically told the officers that "it was fine" for them to come inside. *Id.* at 53. The officers then asked the individuals in the house to "gather so they could get a head count." *Id.* at 54. Although Rush correctly maintains that she may not have given her express consent to search her residence, she did not indicate that she was limiting the scope of the officers' entry. *Id.* at 53. In fact, Rush accompanied one of the troopers as he walked through the house, thereby assenting to their actions. *Id.* at 211. As a result, there is no indication that the police officers exceeded any purported scope of Rush's consent to enter the residence.

■■■ Finally, we note that the police officers' actions may well have been justified under the protective sweep exception to the warrant requirement. This exception applies in circumstances that "include risk of bodily harm or death, aiding a person in need of assistance, protecting private property, or actual or imminent destruction or removal of evidence before a search warrant may be obtained." *Harless v. State*, 577 N.E.2d 245, 248 (Ind.Ct. App.1991). Here, it is apparent that the officers entered the premises to assess the situation and gather the suspected teenagers who had been drinking. Moreover, as discussed above, several of the suspected underage drinkers attempted to hide or flee the premises. Tr. p. 57–88, 71–72. Thus, we reject Rush's contention that the trial court abused its discretion in admitting the evidence that the officers seized during the search and protective sweep of the residence.

### B. The Indiana Constitution

■■■ Notwithstanding the above, Rush also argues that the search of her house violated Article I, section 11 of the Indiana Constitution. Analysis under that provision requires examination of the specific facts of each case and whether police conduct is reasonable in light of the totality of the circumstances. *See Trowbridge v. State*, 717 N.E.2d 138, 144 (Ind.1999). As we consider reasonableness based upon the particular facts of each case, we also give Article I, section 11 a liberal construction in favor of protecting individuals from unreasonable intrusions on privacy. *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 2002). At the same time, "Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime." *Id.* at 966. It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns. Thus, it has been recognized "that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Litchfield v. State*, 824 N.E.2d 356, 360 (Ind.2005). Our determination of the reasonableness of a search or seizure under Section 11 often "turn[s] on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 361.

As discussed above, the officers responded to a complaint that an underage drinking party was occurring at Rush's house. The report was corroborated when an individual who was stopped near Rush's

residence told Deputy Hammel that there was a party inside. Tr. p. 36, 47. Moreover, Trooper Teusch smelled alcohol on the individual who had been standing in Rush's driveway. After knocking on Rush's door, the police received Rush's consent to enter her residence. *Id.* at 53, 73. The police then attempted to gather the individuals in the living room to assess the situation. *Id.* at 54–55. Trooper Teusch went upstairs only after he realized that one of the individuals in the initial "head count" had left the living room. *Id.* at 75. Trooper Hotchkiss went to the basement to assess the situation and found three teenage girls hiding in a closet. *Id.* at 59.

In evaluating these circumstances, there is nothing to suggest that the officers' actions were unreasonable during the course of their investigation. In other words, the officers' intrusion was minimal and their search of the residence did not exceed the scope necessary to assess the situation and determine who was present in Rush's home. Thus, Rush's contention that the officers' actions were unreasonable and violated her rights under Article I, Section 11 of the Indiana Constitution fails.

### III. Sufficiency of the Evidence

■ Finally, Rush claims that the evidence was insufficient to support her conviction. Specifically, Rush argues that her conviction must be reversed because the "uncontradicted evidence showed that the defendant did not regularly keep alcohol in her home, did not provide any alcohol to minors, and the minors brought their own alcohol to her house and concealed it ... in her basement." Appellant's Br. p. 2.

In addressing Rush's challenge to the sufficiency of the evidence, we neither reweigh the evidence nor reassess the credibility of witnesses. *Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). Instead, we consider the evidence most favorable to the verdict and draw all reasonable inferences supporting the ruling below. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *O'Connell v. State,* 742 N.E.2d 943, 949 (Ind.2001). A conviction may be sustained on circumstantial evidence if such evidence supports a reasonable inference of guilt. *Maul v. State,* 731 N.E.2d 438, 439 (Ind.2000). To convict Rush of the charged offense, the State had to prove that she knowingly or intentionally encouraged, aided, induced, or caused a person "less than eighteen years of age to commit an act of delinquency." I.C. § 35–46–1–8.

In this case, the evidence showed that there were approximately twenty-five people at Rush's house on the night of the party. Tr. p. 119. And Rush knew that people were coming into her house to visit her seventeen-year-old daughter. *Id.* at 192. When some of the guests brought alcohol into the house through the front door, Rush was in the living room. *Id.* at 95, 113, 123, 168. At least one individual talked with Rush after he had been drinking in the basement. *Id.* at 104–06. Contrary to Rush's claim that "there was no indication that anything unusual was taking place in the home," appellant's Br. p. 19, she admitted to police officers that she had seen beer cans in the house. Tr. p. 19. Indeed, the police officers discovered a number of empty beer cans and liquor bottles scattered in the basement. State's Ex. 1–5. Moreover, Rush's daughter was one of the juveniles who had been drinking that evening, and the evidence showed that she had talked with Rush during the course of the evening. *Id.* at 216–17.

Although the evidence may not have established that Rush actually supplied the juveniles with alcohol, the trial court could

have reasonably inferred that Rush knew that the minors were drinking in her basement when considering the amount of alcohol that was in the house and the number of individuals who were coming and going from the residence. Moreover, it was reasonable for the trial court to conclude that Rush aided the minors in permitting them to consume alcohol in her home. As a result, we affirm Rush's conviction for contributing to the delinquency of a minor.

The judgment of the trial court is affirmed.

RILEY, J., and MAY, J., concur.