**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jan 29 2014, 10:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

FREDRICK KYLES,                          )
                                         )
    Appellant-Defendant,             )
                                         )
        vs.                 )    No.  49A02-1305-CR-446
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1208-FB-59151

**January 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Frederick Kyles appeals his conviction for Attempted Robbery,[1] a class B felony, and Criminal Recklessness,[2] a class B felony. More particularly, Kyles argues that the handgun admitted into evidence was obtained in violation of his Fourth Amendment rights and contends that the trial court erred in allowing the handgun into evidence. Kyles asserts that Officer William Reddy, who arrested him, did not have probable cause at the time of the search, and therefore, any evidence seized as a result of the arrest should have been deemed inadmissible. The State argues that the evidence was obtained during a valid investigatory stop and resulting frisk. We conclude that the handgun was properly seized, and therefore, affirm the judgment of the trial court.

## FACTS

On August 25, 2012, Kyles was with Michael Miller and Andrew Latimore, and had offered to sell Miller a Hi-Point 9mm handgun. Miller refused, and, when his sister had noticed that some of her money was missing, Miller asked everyone to leave. Later that evening, Kyles approached the residence of Cassandra Patton, who was sitting on her porch along with Miller and Latimore. Miller was using his Ipad as the four conversed. Initially, Kyles and Miller spoke to each other amicably, but Kyles then pulled a handgun, which Miller testified was similar to the one he had offered to sell earlier in the day, pointed it at Miller, and demanded the Ipad. Miller refused, and began backing

---

[1] Ind. Code §§ 35-41-5-1 and 35-42-5-1.

[2] I.C. § 35-42-2-2.

toward the front door of the residence. Kyles then fired at Miller, who fled into the house. Patton and Latimore ran south, and Patton saw Kyles run north toward an apartment complex. Patton called the police.

The police arrived approximately ten minutes later and spoke with Patton, Miller, and Latimore, who provided a description of the man who had tried to take the Ipad from Miller at gunpoint. They described him as a "light-skinned black male," with a "small afro," and told the police he was wearing a white shirt and brown, khaki colored cargo shorts. Tr. p. 19, 31, 158. Miller informed the police that Kyle's first name was Fred. The police also learned the location where Kyles could be found.

Officer Ready was patrolling the 1200 block of East 25th Street when he noticed Kyles, and saw that he matched the description of the shooter. Officer Ready turned his vehicle around and stepped out to approach Kyles, and asked him to identify himself. Kyles gave his name as "Fred Kyles," at which point Officer Ready pulled out his handgun and asked Kyles to lie on the ground. Officer Donald Brown then arrived on the scene and patted down Kyles, in the course of which he discovered a loaded Hi-Point handgun in one of the cargo pockets of Kyles's shorts. Kyles had no license for the gun. Miller and Latimore were then driven to the scene and identified Kyles as the person who had tried to steal Miller's Ipad at gunpoint.

On August 28, 2012, the State charged Kyles with attempted robbery and criminal recklessness. On March 14, Kyles filed a motion to suppress evidence claiming that the handgun was improperly seized. The trial court denied the motion to suppress, and,

3

following a bench trial on April 11, 2013, Kyles was convicted on both counts. Thereafter, on April 25, 2013, the trial court sentenced Kyles to an aggregate sentence of fourteen years.

Kyles now appeals.

DISCUSSION AND DECISION

I. Standard of Review

A trial court is afforded broad discretion when ruling on the admissibility of evidence. Goodner v. State, 685 N.E.2d 1058, 1060 (Ind. 1997). This Court will not disturb the trial court's decision absent a showing of abuse. Id. An abuse of discretion occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances. Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001).

The Fourth Amendment generally prohibits warrantless searches. Rush v. State, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008). For a search to be reasonable under the Fourth Amendment, a warrant is required unless the search falls within an exception to the warrant requirement. Id. The State bears the burden of proving that, at the time the search was performed, an exception to the warrant requirement existed. Id. One such exception to the warrant requirement exists when an officer has reasonable suspicion that a person is involved in criminal activity and performs an investigatory stop. Finger v. State, 799 N.E.2d 528, 523 (Ind. 2003). Whether reasonable suspicion existed to support an investigatory stop is subject to de novo review. Engram v. State, 893 N.E.2d 744, 748 (Ind. Ct. App. 2008).

4

## II. Admissibility of the Evidence

While Kyles contends that the handgun was improperly admitted into evidence, the State argues that both the investigatory stop and the eventual frisk were valid. An investigatory stop is valid if an officer has reasonable suspicion that the person detained is involved in criminal activity. Finger, 799 N.E.2d at 523 (citing Terry v. Ohio, 392 U.S. 1, 31 (1968)). This reasonable suspicion must be based on specific and articulable facts known to the officer at the time of the stop that cause the officer to believe that the defendant may be involved in criminal activity. Id. There must be more than a hunch or unparticularized suspicion, and the officer must be able to point to the specific facts that give rise to the reasonable suspicion. Id. at 535.

At the outset, Kyles contends that Officer Ready lacked probable cause to detain him, but this is not the correct standard. All that is needed for a proper investigatory stop is reasonable suspicion. We do not agree with Kyles's contention that he was under arrest during the stop and frisk. In Mitchell v. State, our Supreme Court stated that, when determining whether a detainment is an arrest or an investigatory stop, we must examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." 745 N.E.2d 775. In Mitchell, our Supreme Court reminded us that there is no "'bright line' for evaluating whether an investigatory stop is unreasonable, and 'common sense and ordinary human experience must govern over rigid criteria.'" Id. at 782 (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)).

Here, Officer Ready was looking for a suspect of a specific description; he knew that the individual was a "light-skinned black male," with a "small afro," and that Kyles was wearing a white shirt and brown, khaki colored cargo shorts. Tr. p. 19, 31, 158. He also knew that the suspect was named Fred. Id. at 53, 160. When Officer Ready saw a man matching the physical description above, he simply asked him his name. Id. at. 181. We agree with the State that this alone does not constitute an improper stop. It was only after Kyles told Officer Ready that his name was Fred that Kyles was detained.

Furthermore, Officer Ready knew that the suspect was armed and that there had been shots fired. The officers were entitled to take precautions to ensure their safety. This was a rapidly developing situation, where police officers were in the midst of investigating an armed robbery, and the officers were permitted to detain and disarm Kyles. See Sharpe, 470 U.S. at 686 (noting that we should "take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing"). In light of these circumstances, both the investigatory stop and eventual frisk were appropriate. Therefore, we decline to find that the trial court erred when it admitted the handgun into evidence.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.

6