## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 17 2015, 9:21 am
CLERK
of the supreme court,
court of appeals and
tax court

---

**ATTORNEY FOR APPELLANT**

John D. Fierek
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Andrew C. Stevens,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 17, 2015

Court of Appeals Cause No.
06A05-1404-CR-144

Appeal from the Boone Superior Court; The Honorable Rebecca S. McClure, Judge;
06D02-1102-CM-128

**May, Judge.**

[1] Andrew Stevens was convicted after a bench trial of Class A misdemeanor operating a vehicle with an alcohol concentration equivalent to at least fifteen-hundredths gram of alcohol per one hundred (100) milliliters of blood or two hundred ten liters of breath.[1]  He argues on appeal his Fourth Amendment rights were violated when police entered his garage without a warrant or his consent after he committed a traffic infraction, and the trial court should not have admitted his blood test results.

[2] We affirm.

## Facts and Procedural History

[3] On February 17, 2011, a Zionsville police officer noticed Andrew Stevens' vehicle approaching him from behind at a high rate of speed that the officer estimated was faster than the twenty mile-per-hour speed limit in that area.  The officer turned onto a side road, then after Stevens went past him he followed Stevens with his lights activated.  Stevens approached a stop sign and slowed to ten-to-fifteen miles per hour but did not stop.  Stevens maintained that speed until he turned into his driveway and pulled into his garage.

[4] The officer pulled into Stevens' driveway and approached Stevens, entering the garage and identifying himself as a police officer.  Stevens did not invite the

---

[1] Ind. Code § 9-30-5-1(b).

officer into the garage, and the officer did not have a warrant to enter it.[2]  The officer asked Stevens for his license and registration.  While he was helping Stevens find his registration, the officer noticed Stevens had the odor of an alcoholic beverage on his breath, glassy, bloodshot eyes, and poor manual dexterity.

[5]  Stevens asked the officer if he could go inside the house to let his dogs out.  The officer told Stevens to remain outside, but Stevens entered his house anyway.  Stevens returned from the house with his dogs.  The officer told him to remain outside, but Stevens again went back into the house.  He returned and the officer told Stevens to sit in the police car, but Stevens turned to go inside the house again.  The officer blocked his path and had Stevens sit in the police car.

[6]  Two Whitestown police officers arrived, and when the Zionsville officer left his car to speak with them, Stevens exited the police car.  The officers told him to stay in the car but Stevens tried to exit it again.  The officers then asked Stevens

---

[2]  In his Statement of Facts, Stevens says the officer "testified . . . he didn't have probable cause to arrest Stevens for anyting [sic] when he entered the garage (Tr. p. 37)."  (Appellant's Br. at 3.)  Nothing on that page of the transcript supports counsel's statement the officer "didn't have probable cause to arrest Stevens." That misrepresentation is of particular concern because it might, if true, directly affect the propriety of Stevens' conviction.  See *Haley v. State*, 696 N.E.2d 98, 101 (Ind. Ct. App. 1998) (warrantless search can be justified only by probable cause and an exception to the warrant requirement; "[a]lthough an exception may justify proceeding without a warrant, it does not eliminate the need for probable cause"), *trans. denied*.  *And see Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997) (finding factual misrepresentations "particularly offensive because they would, if true, directly affect the propriety of the trial court grant of judgment on the evidence").

to perform a field sobriety test but he would not. Stevens refused a chemical test, and the officers obtained a search warrant for a blood draw.

[7] The officers took Stevens to a hospital where a blood sample was obtained. In such a situation, the hospital takes two samples. One, which is placed in a tube with a red stopper ("the red tube"), contains no additives and is used as a preliminary test and analyzed immediately. The other, which is placed in a tube with a gray stopper ("the gray tube"), contains an additive and is analyzed later and used as a confirmatory test. The gray tube used for Stevens' blood draw was three years past its expiration date, but the expiration date refers only to the guarantee of the tube's vacuum. The confirmatory test showed Stevens' alcohol concentration equivalent ("ACE") was .23 grams of alcohol per 100 milliliters of blood, and the red tube test indicated a concentration between .18 and .22. Stevens was charged with operating a vehicle with an ACE over .15. Both blood draws were admitted into evidence and the trial court determined the Zionsville officer was justified in entering Stevens' garage because Stevens was fleeing and the officer was in pursuit.

## Discussion and Decision

[8] Admission of evidence at trial is left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review its determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. at 260. The standard used to review rulings on the admissibility of evidence "is effectively the same whether the challenge is made

by a pre-trial motion to suppress or by a trial objection." *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008). We will not reweigh evidence and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. We will also consider any uncontested evidence in favor of the nonmovant. *Id.* We will affirm the decision if it is supported by substantial evidence of probative value. *Id*. The trial court's ruling will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Id*. Harm arising from evidentiary error is "lessened if not totally annulled" when, as in the case before us, the trial is by the court sitting without a jury. *Loman v. State*, 265 Ind. 255, 260, 354 N.E.2d 205, 209 (1976).

### *Police Entry into Stevens' Garage*

The Fourth Amendment generally prohibits warrantless searches. *Id*. The purpose of the Fourth Amendment is to protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Id*. The touchstone of the Fourth Amendment is reasonableness, and reasonableness is measured in objective terms by examining the totality of the circumstances. *Id*.

If a warrantless search is conducted, the burden is on the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Id*. That is, searches conducted without a warrant are *per se* unreasonable, subject to a few well-delineated exceptions. *Id*. Whether a warrantless search violates the guarantees of the Fourth Amendment depends on the facts and circumstances of each case. *Id*.

The existence of exigent circumstances falls within the exception to the warrant requirement. *Id.* In essence, the warrant requirement becomes inapplicable when the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. *Id.* Such circumstances include "hot pursuit." *Id.*

In denying Stevens' motion to suppress, the trial court determined the officer was in pursuit of Stevens after he saw Stevens "speeding through his residential neighborhood, and failing to stop for a stop sign and signal to turn into his driveway. Further, Stevens was fleeing from [the officer] after the officer activated his emergency lights." (App. at 99.) The officer was not required to obtain a warrant to enter Stevens' garage because he was in "pursuit."

A suspect "may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976). We acknowledge the United States Supreme Court's statement in *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984), that

> hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. *See Payton v. New York, supra*, 445 U.S. [573, 586 (1980)]. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with

a warrant issued upon probable cause by a neutral and detached magistrate.

[12] While we are mindful of that hesitation, we have explicitly held that where there is immediate or continuous pursuit from the scene of a misdemeanor crime to the door of the defendant's home, a warrantless home arrest is permitted. *See State v. Blake*, 468 N.E.2d 548, 553 (Ind. Ct. App. 1984) ("[a] police officer in continuous pursuit of a perpetrator of a crime committed in the officer's presence, be it a felony or a misdemeanor, must be allowed to follow the suspect into a private place, or the suspect's home if he chooses to flee there, and effect the arrest without a warrant"). Admission of evidence obtained after the officer followed Stevens into his garage was not error.

### *Admission of Confirmatory Blood Test Results*

Stevens argues the gray tube evidence should have been excluded as unreliable because the tube was three years past its expiration date when Stevens' blood

was drawn.[3]  As the challenge Stevens raises addresses only the weight of the gray tube evidence and not its admissibility, we find no error.[4]

[13]  Ind. Code § 9-30-6-6(a) provides blood samples may be obtained by a "physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician," and such "samples, test results, and testimony may be admitted in a proceeding in accordance with the applicable rules of evidence."  Ind. Code § 9-30-6-6(c)(2). Once the trial court has ruled a witness qualified as a matter of law[5] to give expert scientific testimony,

> subsequent evaluation of that evidence goes only to its weight as a matter of fact.  Any . . . conflict as to the reliability of evidence is to be resolved by the trier of fact, whose finding in this regard will be upheld

---

[3]  Stevens also notes a blood test, to be admitted, must be conducted by a "physician or a person  . . . acting under the direction of or under protocol prepared by a physician."  Ind. Code § 9-30-6-6(a).  Stevens asserts the phlebotomist who conducted the blood draw "testified that she does not work under the direction of" the physician who is medical director for the facility because "[the physician] works a day shift and [the phlebotomist] works a night shift."  (Appellant's Br. at 15.)

Stevens does not direct us to anyplace in the record where such testimony might be found, nor does he offer legal authority to support the premise a person cannot act "under the direction of" another unless both work the same shift.  We are therefore unable to address that argument.  *See, e.g., Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012) (a court that must search the record and make up its own arguments because a party has not adequately presented them runs the risk of becoming an advocate rather than an adjudicator; on review, we will not search the record to find a basis for a party's argument nor will we search the authorities cited by a party in order to find legal support for its position), *trans. denied*.

[4]  As admission of the gray tube evidence was not error, we need not address whether admission of the red tube evidence was error as it was cumulative of the gray tube evidence.

[5]  Stevens does not argue on appeal the phlebotomist who drew Stevens' blood was not "qualified as a matter of law" to give expert scientific testimony.  He does assert, without explanation or citation to the record, that Dr. Scott Krieger, the acting director of the state Department of Toxicology, was "the only expert witness to present evidence."  (Appellant's Br. at 18.)

on review as long as the favorable evidence adequately supports it, as with any sufficiency question.

*Hopkins v. State*, 579 N.E.2d 1297, 1303-04 (Ind. 1991). That scientific testing may be subject to error if not properly conducted is not a reason for rejecting evidence adduced thereby. *Burp v. State*, 612 N.E.2d 169, 173 (Ind. Ct. App. 1993). The persuasiveness of evidence produced by such a test depends in large part on the expertise of the witness who conducted it and is to be determined by the trier of fact. *Id.*

[14] The phlebotomist testified she had been a laboratory phlebotomist for twelve years and had done "[h]undreds" of blood draws and at least one hundred "legal" blood draws. (Tr. at 99-100.) She testified she conducted Stevens' blood draw pursuant to the hospital's protocol.

[15] The gray tube was three years past its expiration date, and the phlebotomist testified using an expired tube would not be "proper equipment selection." (*Id.* at 114.) While she had testified at one point that she conducted Stevens' blood draw pursuant to the hospital's protocol, she later agreed that "part of the protocol, one of the steps is proper equipment selection." (*Id.* at 113.)

[16] Even if the phlebotomist violated hospital protocol by using an expired tube, we decline to find reversible error in light of evidence the use of an expired tube did not affect Stevens' blood sample. Dr. Krieger testified the expiration date referred only to whether the tube had a vacuum, which is necessary to cause enough blood to flow into the tube to obtain an adequate sample. He testified the vacuum "won't affect [the sample result] at all." (*Id.* at 267.) In *State v.*

*Bisard*, 973 N.E.2d 1229, 1237 (Ind. Ct. App. 2012), *trans. denied*, we addressed similar allegations a blood draw protocol was not followed: "There is no contention on appeal that this mattered in any real-world sense, much less any medical evidence so suggesting. Indeed, the only medical evidence in the record is from a physician who testified that it did not." Admission of evidence Stevens' ACE was .23 grams of alcohol per 100 milliliters of blood was not reversible error.

## Conclusion

[17] Stevens' Fourth Amendment rights were not violated when police entered his garage because the officer was in pursuit of Stevens, and admission of the blood draw evidence was not error even though the gray tube had passed its expiration date. We accordingly affirm.

[18] Affirmed.

Vaidik, C.J., and Friedlander, J., concur.