## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 02 2018, 5:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan D. Harwell
Harwell Legal Counsel LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Sanders,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 2, 2018

Court of Appeals Case No.
18A-CR-684

Appeal from the Marion Superior
Court

The Honorable Kurt Eisgruber,
Judge

Trial Court Cause No.
49G01-1605-FA-19235

**Bradford, Judge.**

# Case Summary

[1] David Sanders molested his step-daughter B.D. approximately three times a week for a period of nearly ten years. He was subsequently charged with and found guilty of two counts of Class A felony child molesting, two counts of Class C felony child molesting, Class D felony child solicitation, and Class D felony child seduction. Sanders challenges his convictions on appeal, claiming that the State failed to disclose favorable evidence, the trial court abused its discretion in admitting certain evidence, and the evidence is insufficient to sustain his convictions. We affirm.

# Facts and Procedural History

[2] In 2003, when B.D. was six years old, her mother married Sanders. From that time forward, B.D. lived in a home with her mother, Sanders, and her siblings and step-siblings. At some point, Sanders began sexually molesting B.D. The abuse was frequent, occurring "probably at least three times a week" in either an office or the walk-in closet in the master bedroom. Tr. Vol. II p. 124. At first, the abuse consisted of "a lot of like touchy feely things." Tr. Vol. II p. 108. B.D. "would have to give [Sanders] hand jobs" before he would allow her certain privileges such as being allowed to go to a friend's home. Tr. Vol. II p. 108. Sanders made B.D. "jack him off," remove her shirt, and "let him finish" on her chest. Tr. Vol. II p. 111.

[3] B.D. first reported the abuse while she was in second grade. One day, while she had a friend over, B.D. went downstairs to get a snack or a drink. As she was going back up the stairs, Sanders "flashed his penis at [her] and like shook it around and wanted [her] to come over." Tr. Vol. II p. 113. B.D. continued up the stairs and reported Sanders's behavior to her friend. B.D.'s friend told her parents who reported B.D.'s claims to B.D.'s parents. B.D. later recanted because she was "scared." Tr. Vol. II p. 114.

[4] While the abuse then stopped, it restarted approximately two years later. The abuse escalated to the point "where [Sanders] would put his hands in [B.D.'s] pants and put his fingers inside of [her vagina]" and "where he would give oral [sex] to [her]." Tr. Vol. II p. 116. Once B.D. reached middle school, Sanders "asked if [she] was ever going to have sex with him" and said "that other people in middle school are losing their virginities [sic] too already." Tr. Vol. II pp. 120, 125. B.D. responded that she was "not losing [her] virginity to [her] step-dad." Tr. Vol. II p. 120.

[5] In April of 2013, when B.D. was a sophomore in high school, B.D.'s boyfriend joined the family on a vacation. When the family returned home, B.D. performed oral sex on Sanders in exchange for him allowing her boyfriend to accompany the family on their vacation. Although scared, B.D. tolerated the abuse because she did not want to ruin her mother's or siblings' lives. She also understood that subjecting herself to the abuse was the only way she could gain privileges from Sanders.

[6] In 2015, when B.D. was eighteen years old, Sanders asked B.D. to "flash" him in exchange for his help fixing a television. Tr. Vol. II p. 121. B.D. declined Sanders's request. Later that day, B.D.'s boyfriend asked her why she was upset. B.D. "was just so upset that [Sanders] said that to [her] again," and she was "old enough to finally realize that everything was wrong for so many years and that [the abuse] shouldn't be happening." Tr. Vol. II p. 122. At her boyfriend's insistence, B.D. reported the abuse to her mother.

[7] On May 19, 2016, the State charged Sanders with two counts of Class A felony child molesting, two counts of Class C felony child molesting, Class D felony child solicitation, and Class D felony child seduction. Sanders was found guilty as charged following a jury trial.[1]

# Discussion and Decision

[8] In challenging his convictions, Sanders raises the following contentions: (1) the State failed to disclose favorable evidence in violation of the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 87 (1963); (2) the trial court abused its discretion in admitting certain evidence; and (3) the evidence is insufficient to sustain his convictions.

---

[1] There is some confusion as to the length of Sanders's sentence. The trial court's sentencing order indicates that Sanders was sentenced to an aggregate, forty-year term while the parties indicate that he was sentenced to an aggregate, thirty-year term.

# I.  Alleged *Brady* Violation

Sanders contends that the State violated *Brady* by allegedly failing to disclose potentially contradicting audio statements made by its witnesses until the week prior to trial.  In *Brady*, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution."  373 U.S. at 87.  *Brady* is not implicated, however, if the evidence "becomes known to the defendant before or during the course of a trial."  *Williams v. State*, 714 N.E.2d 644, 649 (Ind. 1999).  It is undisputed that the evidence at issue was both made known and provided to Sanders prior to trial.  As such, *Brady* is not implicated.  *See id.*

# II.  Admission of Evidence

The admission or exclusion of evidence is entrusted to the discretion of the trial court.  We will reverse a trial court's decision only for an abuse of discretion.  We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant.  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law.

*Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012) (internal citations omitted).  The trial court's ruling will be upheld "if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory."  *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008).

# A. Text Messages

Sanders challenges the admission of State's Exhibit 1 ("Ex. 1"), which provides a record of certain text messages sent between Sanders and his cousin Christina Cox, claiming that it was not properly authenticated.

> Indiana Rules of Evidence Rule 901(a) provides that "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Absolute proof of authenticity is not required. Rather, the proponent of the evidence must establish only a reasonable probability that the evidence is what it is claimed to be, and may use direct or circumstantial evidence to do so. Once this reasonable probability is shown, any inconclusiveness of the evidence's connection with the events at issue goes to evidential weight, not admissibility.

*M.T.V. v. State*, 66 N.E.3d 960, 963 (Ind. Ct. App. 2016) (internal citations omitted), *trans. denied*. "Letters and words set down by electronic recording and other forms of data compilation are included within Rule 901(a)." *Id.* "Testimony that an item is what it is claimed to be, by a witness with knowledge" is evidence that satisfies the authentication requirement. Ind. Evid. R. 901(b).

During trial, Cox identified the text messages as those sent between her and Sanders. She indicated that Ex. 1 appeared to be a full and complete copy of the text messages. Cox's testimony established a reasonable probability that Ex. 1 was what the State claimed it to be. As such, we conclude that the trial court did not abuse its discretion in admitting Ex. 1 into evidence.

## B.  Alleged Vouching Evidence

[13]    Sanders also challenges the admission of alleged vouching evidence in violation of Indiana Evidence Rule 704(b), which provides that witnesses "may not testify to opinions concerning … whether a witness has testified truthfully."  In *Baumholser v. State*, 62 N.E.3d 411, 415–16 (Ind. Ct. App. 2016), we concluded that testimony that victims of child molestation often delay disclosure was not improper vouching under Evidence Rule 704(b) because it did not include any opinion as to whether the alleged victim was telling the truth.  In this case, Indianapolis Metropolitan Police Detective Justin Hickman, who investigated B.D.'s claims, testified that he had extensive experience interviewing potential child victims in molestation cases, having completed various training programs and investigated approximately 500 such cases.  Detective Hickman further testified that approximately seventy-five percent of those 500 cases involved delayed disclosures.  Like the testimony at issue in *Baumholser*, Detective Hickman's testimony did not relate to the truth or falsity of B.D.'s allegations but, rather, related to his experience with the general behavior of alleged child molestation victims.  The trial court did not err in admitting Detective Hickman's testimony as it was not improper vouching.  *See id*. at 416.

# III.  Sufficiency of the Evidence

[14]    When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict.  It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether

> it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted).

[15]   In this case, the record contains ample evidence from which one could reasonably find that Sanders committed the charged offenses. B.D. testified at length about the abuse that Sanders subjected her to. Specifically, she testified that she "would have to give [Sanders] hand jobs" before he would extend certain privileges. Tr. Vol. II p. 108. Sanders would make B.D. "jack him off," remove her shirt, and "let him finish" on her chest. Tr. Vol. II p. 111. Eventually, the abuse escalated to the point "where [Sanders] would put his hands in [B.D.'s] pants and put his fingers inside of [her vagina]" and "where he would give oral [sex] to [her]." Tr. Vol. II p. 116. Once B.D. reached middle school, Sanders made repeated requests for sex. Also, at Sanders's insistence, B.D. performed oral sex on him during her sophomore year in high school in exchange for him allowing her boyfriend to accompany the family on a vacation. The abuse was frequent, occurring "probably at least three times a week." Tr. Vol. II p. 124.

[16] B.D.'s testimony was bolstered by evidence of Sanders's admissions and expressions of remorse. B.D.'s mother testified that when confronted, Sanders did not deny the allegations, but rather merely indicated that he was sorry and that he did not know why he had repeatedly abused B.D. Likewise, Sanders told Cox during a phone conversation "that there was just touching here and there" and he did not "know why he does the things he does." Tr. Vol. II p. 61. Sanders also expressed remorse during a series of text messages that he sent to Cox. These messages indicated that he was ashamed and regretted hurting his family, he "screwed up," and he hated himself for what he had done to B.D. State's Ex. 1.

[17] In arguing that the evidence is insufficient to sustain his convictions, Sanders does not contest the sufficiency of the evidence to prove any particular count, but rather challenges B.D.'s credibility. Specifically, Sanders claims that B.D.'s testimony that "at no time did anyone almost walk-in or ever catch them in the act even though people would be home during the alleged instances" was "so inherently unbelievable." Appellant's Br. p. 14. Review of the record, however, reveals B.D.'s testimony to be consistent and credible. Sanders's claim amounts to an invitation to both reweigh the evidence and reassess B.D.'s credibility, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002) (providing that upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses).

[18] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.