**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Becky Lynn BARRETT, Defendant–Appellant.**

No. 92–3910.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1993.

Decided Nov. 5, 1993.

Virginia G. Villa, Minneapolis, MN, argued (Katherian D. Roe and Virginia G. Villa, on the brief), for defendant-appellant.

Andrew Mark Luger, Minneapolis, MN, argued (Thomas G. Heffelfinger, Andrew M. Luger and Michelle Zehnder, on the brief), for plaintiff-appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Becky Barrett appeals her convictions for assault with a dangerous weapon and assault resulting in serious bodily injury in violation of 18 U.S.C. § 1153 and 18 U.S.C. §§ 113(c) and (f). We vacate her convictions and remand for further proceedings.

## I.  BACKGROUND

Barrett's three-year-old daughter, RLB, told several people at the Red Lake Indian Reservation that Barrett had burned RLB's

legs with a lit cigarette. Carol Cloud, a child protection worker, investigated the child abuse report and interviewed RLB. During the interview, Cloud gave RLB a white pen and asked her to pretend it was a cigarette. RLB took the pen, put it to her mouth, "puffed" on it, and touched her legs.[1] When Cloud transported RLB to a court appointment several months later, RLB volunteered to her, "When I go home, I am going to talk to my mom and dad and tell them to stop drinking and smoking so they won't fire me up no more." Tribal Social Services requested that Dr. Darryl Zitzow, a clinical psychologist, assess RLB. RLB told Dr. Zitzow that her mother and her mother's boyfriend "Baron" had touched her legs with the fire on a cigarette. During RLB's second visit with Dr. Zitzow, he asked if anyone touched her in the past in a way she did not like, and she repeated her earlier accusation. In a later visit with Dr. Zitzow, RLB recounted the burning incident and said that her mother touched her legs with a cigarette.

Barrett and her boyfriend, James Byron Lussier, were indicted. Before trial, the district court questioned RLB, who was four years old at the time, to determine whether she could testify:

> THE COURT: [RLB], do you know what it means to tell the truth?
>
> RLB: No.
>
> Q: Do you know what it means to not tell the truth?
>
> A: What?
>
> Q: When people ask you questions and you answer them, are you usually telling the truth?
>
> A: (Nods head).
>
> Q: You have to say yes or no.
>
> A: Yes.
>
> Q: Do you know what it means to lie?
>
> A: No.
>
> Q: Do you ever lie?
>
> A: No.

> Q: Do you ever tell fibs?
>
> A: No.
>
> Q: Do you know what a fib is?
>
> A: No.
>
> . . . .
>
> Q: Now, do you know what it means to tell a story, tell the truth?
>
> A: No.
>
> Q: Do you know what it means to tell a fib or a lie?
>
> A: (Shaking head no).[2]

After this hearing, the court determined that RLB could not testify at trial.

The jury found Barrett guilty and acquitted Lussier. Barrett appeals her conviction on five grounds. Because of our holding today, we need only address her arguments related to evidentiary matters and to the Confrontation Clause.

## II. DISCUSSION

### A. The District Court Erred in Not Allowing Barrett to Introduce RLB's Statements from Her Competency Hearing

During the trial, Barrett asked a witness who was present at the competency hearing about RLB's statements that she did not know the difference between telling the truth and telling a lie. The government objected, and the court sustained the objection. Later, the court detailed three reasons for its ruling. First, the court was unsure if RLB ever verbally responded to whether she knew the meaning of the truth or a lie. The judge described RLB as "a witness who was shaking her head or nodding her head and twirling in the chair and basically being what I would call non-responsive to the area of the inquiry." Second, the hearing was conducted almost a year after the time when RLB's hearsay statements were made. Third, the defense had ample opportunity to impeach RLB's credibility through the family mem-

---

**1.** RLB later performed this same demonstration, pretending a pen cap was a cigarette and dotting her legs, in front of Dr. Gary Anderson, a family practitioner, and Dr. Darryl Zitzow. During the demonstration in front of Dr. Zitzow, RLB stated, "Mommy did this to me."

**2.** Not all of RLB's answers were monosyllabic, as evidenced by her responses to questions about her age, where she lives, her brothers' names and ages, and her schooling.

bers and others who testified. The court stated that "for those reasons, among others," RLB's testimony from the hearing would not be admitted.

■ The record is clear that RLB responded verbally that she did not know what it meant to tell the truth or what it meant to lie. The fact that RLB's hearsay statements were made almost a year earlier is not a reason for excluding RLB's statements from her competency hearing. Federal Rule of Evidence 806[3] permits the impeachment of a hearsay declarant's reputation for truthfulness. *See United States v. Moody*, 903 F.2d 321, 328 (5th Cir.1990) ("a hearsay declarant is deemed to be a witness whose credibility is subject, in fairness, to impeachment"). RLB's own testimony that she did not know what it meant to tell the truth or what it meant to tell a lie is relevant to her truthfulness at the time the hearsay statements were made. Relevant evidence should be admitted unless there is a reason to exclude it, and such evidence should not be excluded simply because there are "other ways" to impeach a witness.

In ruling that RLB could not testify, the judge stated, "I was unable to satisfy myself that she is at least able to tell us that she knows the difference between right and wrong and truth or falsity...." From the record, we are unable to determine whether the district court concluded that RLB *could not explain* that she understood the difference between truth and falsity or whether the court concluded that RLB *did not know* the difference. If the former is true, and

RLB was unable to comprehend the questions and communicate her knowledge in a courtroom setting, then RLB's answers may have been properly excluded as non-responsive and irrelevant.[4] However, if the court found that RLB could not testify because she did not know what it meant to tell the truth, then RLB's statements were admissible for impeachment purposes. Because we are unsure on which of these two rationales the district court based its ruling, we must remand this case.

Our concern and difficulty in resolving this case ultimately rest upon preserving the constitutional guarantees premised in the Confrontation Clause of the Sixth Amendment.[5] Assuming that RLB understood the court's questions, her answers should have been admitted. The jury would then have determined the issue in full compliance with the Confrontation Clause. Preventing Barrett from engaging in appropriate cross-examination and exposing the jury to evidence from which it could draw inferences about RLB's reliability violated the Confrontation Clause. *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986).

### B. The Admission of RLB's Hearsay Statements Under the Residual Exception

■ RLB's hearsay statements that the district court admitted under the residual exception[6] fall into two categories: the statement made to Carol Cloud and the state-

---

3. "When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." Fed.R.Evid. 806.

4. Part of the reason RLB's answers are difficult to evaluate is due to the manner in which the court conducted the examination. The following questions illustrate a helpful way to elicit a child's understanding of the difference between truth and falsehood: Hold up one pencil and ask, "If I told you this pencil was red would that be true? Do I have two pencils in my hand? When I said I had two pencils, was I telling the truth? Was I telling a lie when I said I had two pencils?" *See* 1 John E. Myers, *Evidence in Child Abuse and Neglect Cases* 129 (2d ed. 1992).

5. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

6. "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed.R.Evid. 803(24).

ments made to RLB's relatives and neighbors. In order to comply with the Sixth Amendment, hearsay statements offered into evidence must bear "adequate 'indicia of reliability.'" *Idaho v. Wright,* 497 U.S. 805, 815, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990) (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). This reliability requirement is fulfilled when the hearsay statement either "'falls within a firmly rooted hearsay exception'" or occurs under circumstances with "'particularized guarantees of trustworthiness.'" *Id.* at 815, 110 S.Ct. at 3146 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539). Because the residual exception "is not a firmly rooted hearsay exception for Confrontation Clause purposes," *United States v. Spotted War Bonnet,* 933 F.2d 1471, 1473 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992) (quotation omitted), these statements must be analyzed for particularized guarantees of trustworthiness. In order to determine whether a statement meets this standard, the trial court must examine the totality of the circumstances surrounding the making of the statement and those rendering the declarant particularly worthy of belief. *Wright,* 497 U.S. at 819, 110 S.Ct. at 3148. Some of the factors that are appropriate for the court to consider include the spontaneity of the statement, the consistent repetition, and the child's lack of a motivation to fabricate. *Id.* at 821–22, 110 S.Ct. at 3149–50. Although RLB's statement to Carol Cloud was spontaneous, it came after months of adults discussing the marks on her legs with RLB. In its determination whether this statement contains particularized guarantees of trustworthiness, the district court should consider that "'[i]f there is evidence of prior interrogation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness.'" *Id.* at 826–27, 110 S.Ct. at 3152 (citations omitted).

■ Another factor to consider in determining whether RLB's hearsay statements contain particularized guarantees of trustworthiness is the reason for RLB's inability to testify at trial. While the Confrontation Clause "does not erect a *per se* rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial," the declarant's inability to communicate may be relevant to whether the hearsay statements possessed particularized guarantees of trustworthiness. *Id.* at 825, 110 S.Ct. at 3151. Should the district court determine that RLB did not know the difference between the truth and a lie, this finding would have an obvious impact on whether RLB's hearsay statements were trustworthy.

## C. The Admission of RLB's Hearsay Statements Under the Exception for Medical Diagnosis or Treatment

■ The twin rationales for admitting hearsay statements under the exception for medical diagnosis or treatment[7] are the declarant's motivation to provide truthful information in order to promote diagnosis and treatment and the physician's reasonable reliance on such information for those purposes. *United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). In cases involving very young children, who do not seek medical treatment by themselves but instead are brought to the physician by someone else, there must be evidence that the child understood the physician's role in order to trigger the motivation to provide truthful information. The child does not necessarily have to testify; for instance, Dr. Zitzow can testify that his role was explained to RLB and that she understood it. *Ring v. Erickson,* 983 F.2d 818, 820 n. 2 (8th Cir. 1993). The government argues that we can infer RLB understood the physician's role because Dr. Zitzow's office was located a hospital and because RLB showed Dr. Zitzow her legs when she met him. We are not thoroughly convinced that the government's suggested line of reasoning adequately demonstrates RLB's level of understanding. In any event, because this case is to be remanded for the reasons outlined above, there is no need to decide this issue.

---

7. "Statements made for purposes of medical diagnosis or treatment and describing ... the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Fed.R.Evid. 803(4).

## III. CONCLUSION

We reiterate, the unallowed evidence of RLB's responses to the district court's questions should be admitted, and the jury would then determine the issue in full compliance with the Confrontation Clause. Based on the foregoing, we vacate Barrett's conviction and remand for further proceedings.