

**ATTORNEY FOR APPELLANT**

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, LLP
Huntington, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wiley W. Walters, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 20, 2017 <br><br> Court of Appeals Case No. <br> 35A02-1601-CR-168 <br><br> Appeal from the Huntington <br> Circuit Court <br><br> The Honorable Thomas M. Hakes, <br> Judge <br><br> Trial Court Cause No. <br> 35C01-1502-F1-41 |

**May, Judge.**

[1] Wiley W. Walters, Jr. appeals his convictions for two counts of Level 1 felony child molest[1] and two counts Level 4 felony child molest.[2] Walters raises two issues, which we restate as:

1. Whether the court abused its discretion in allowing hearsay testimony pursuant to the exception for statements made for medical diagnosis or treatment, and

2. Whether his fifty-year sentence was inappropriate.

We affirm.

## Facts and Procedural History

[2] On January 16, 2015, Walters picked up ten-year-old B.E., his relative,[3] from her home. B.E. and her siblings had stayed with Walters before but he requested they visit separately this time because "they're a little too rambunctious together." (Tr. at 336.) Walters and B.E. first went to Dairy Queen, where Walters told B.E. they would be staying in a hotel rather than with his brother, John, where Walters usually lived. B.E. objected to this

---

[1] Ind. Code § 35-42-4-3(a)(1) (2014).

[2] Ind. Code § 35-42-4-3(b) (2014).

[3] Walters is the victim's great-grandmother's brother. (*See* Tr. at 335 (victim's mother testifies Walters is her "great-uncle . . . father's uncle . . . grandmother's brother").)

change in plans, but Walters took her to the hotel. B.E.'s mother, C.E., was not aware of Walters' plan to stay at a hotel.

[3] When they arrived at the hotel, Walters already had the room key. Walters and B.E. went to the room and watched some television. Walters then insisted B.E. disrobe and take a bath. When she objected, he threatened to spank her and started to count to three, so she disrobed. Walters followed her into the bathroom and asked if he could watch. B.E. objected, and Walters left the bathroom.

[4] B.E.'s clothing was outside the bathroom. When she came out of the bath, Walters insisted he dry her off. As he dried her, he touched her "who-who."[4] (*Id*. at 179.) B.E. got dressed, but Walters ordered her to disrobe again and get into bed under the covers. He undressed down to his underwear and got into the bed. Walters proceeded to squeeze B.E.'s breasts and her buttocks. He kissed B.E. and then touched and penetrated B.E.'s genitalia with his finger. He forced B.E. to touch his genitalia and performed oral sex on her. Afterward, Walters and B.E. went to John's house. The following day, B.E.'s brother joined them.

[5] On January 24, 2015, while planning B.E.'s eleventh birthday party, C.E. noticed her daughter was decidedly moody and "having bouts of emotions." (*Id.* at 341.) When C.E. tried to talk to B.E., B.E. told her what had happened.

---

[4] B.E. identified her "who-who" to be her "female sex organ." (Tr. at 186.)

C.E. contacted her husband, Walters, and her father. C.E. then contacted the Huntington County Sheriff's Department. On January 29, 2015, B.E. was interviewed at McKenzie's Hope, a Child Advocacy Center. On January 30, 2015, B.E. was examined at the Fort Wayne Sexual Assault Treatment Center by Shawn Callahan, a sexual assault nurse examiner.

[6] The State charged Walters with two counts of Level 1 felony child molest and two counts Level 4 felony child molest. At trial, when Nurse Callahan testified as to what she was told by B.E., Walters objected. His objection was overruled pursuant to the "medical records exception." (*Id*. at 303.) Although Walters continued his objection, the trial court still overruled him because B.E.'s discussion with Callahan was for "medical purposes, and the witness was identified as a nurse, and identified herself to the child[.]" (*Id.* at 308.) The jury found him guilty of all counts.

[7] During sentencing, the trial court found as aggravators Walters's violation of his position of trust, his position of authority, and his "extensive" criminal history. (*Id.* at 457.) The trial court proceeded to sentence Walters to the maximum term of fifty years each on the Level 1 felonies and to the maximum of twelve years each for the Level 4 felonies. The court ordered all sentences served concurrently, resulting in an aggregate sentence of fifty years.

# Discussion and Decision

# Admission of Evidence

[8] Admission of evidence at trial is left to the discretion of the trial court. *Clark v. State,* 994 N.E.2d 252, 259-60 (Ind. 2013). We review its determinations for abuse of that discretion, and we reverse only when admission is clearly against the logic and effect of the facts and circumstances, and the error affects a party's substantial rights. *Id.* at 260. We will not reweigh evidence and we consider conflicting evidence most favorably to the trial court's ruling. *Rush v. State,* 881 N.E.2d 46, 50 (Ind. Ct. App. 2008). We also consider uncontested evidence in favor of the nonmovant. *Id.* We affirm the court's decision if it is supported by "substantial evidence of probative value." *Id.* The ruling will be upheld if it can be sustained "on any legal theory supported by the record, even if the trial court did not use that theory." *Id.*

[9] Walters asserts the court abused its discretion by admitting inadmissible hearsay. Hearsay is "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is inadmissible except as provided by law or other court rules. Evid. R. 802.

[10] One exception to that inadmissibility rule is a statement made for purposes of a medical diagnosis or treatment. Evid. R. 803(4). For hearsay to fall into this exception, it must be a statement that:

> (A) is made by a person seeking medical diagnosis or treatment;

(B) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and

(C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

*Id*. This exception "reflects the idea that people are unlikely to lie to their doctors because doing so might jeopardize their opportunity to be made well." *VanPatten v. State,* 986 N.E.2d 255, 260 (Ind. 2013). To test whether the declarant's self-interest in obtaining effective medical treatment makes the hearsay report adequately reliable for admission, the court must determine: "1) is the declarant motivated to provide truthful information in order to promote diagnosis and treatment; and 2) is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996).

[11] The statements made by victims of sexual assault "satisfy the second prong of the analysis because they assist medical providers in recommending potential treatment for sexually transmitted disease, pregnancy testing, psychological counseling, and discharge instructions." *VanPatten*, 986 N.E.2d at 260. The first prong regarding the declarant's motivation can generally be inferred from the fact a victim sought medical treatment. *Id.* at 260-61. However, when children are brought to the medical provider by their parents, an "inference [of the declarant's motivation] may be less than obvious" as the child may not understand the purpose of the examiner or the relationship between "truthful responses and accurate medical treatment." *Id.* Thus, in these situations,

evidence must be presented to show the child understood the medical professional's role and the importance of being truthful. *Id.* Such evidence may be presented "in the form of foundational testimony from the medical professional detailing the interaction between [her] and the declarant, how [she] explained [her] role to the declarant, and an affirmation that the declarant understood that role." *Id*. at 261.

[12]  Walters claims the testimony of the forensic nurse Shawn Callahan was analogous to the testimony of the forensic nurse in *VanPatten*. In *VanPatten*, our Indiana Supreme Court held the State had not established the six-year-old victims understood the importance of telling the nurse the truth in order to get accurate medical treatment. *Id.* at 265. The nurse had observed the police interviews, the medical examination had been directly preceded by extensive interviews at the Department of Child Services, and the children themselves did not testify they had understood the nurse's role. *Id.* at 266. The nurse was unable to testify what she said to the victims, how they responded, and if they understood the situation. *Id.* at 267.

[13]  The facts here are distinguishable from those in *VanPatten*. First, B.E. was eleven years old, not six, when she saw the nurse. Second, the nurse had not attended any of the previous interviews of B.E., so there was no suggestion she would steer the conversation to support the allegations. Third, the physical examination took place on a different day than the other interviews, rather than immediately following the police interviews. Fourth, Nurse Callahan was able to recall exactly what and how she explained her role to B.E. In fact, she twice

explained her role to B.E. before starting the physical examination. In addition, Nurse Callahan was dressed in scrubs and explained that medical practitioners wear them, the building was situated separate from law enforcement agencies, and the décor of the office mimicked that of a regular doctor's office. Fifth, B.E. was able to articulate Nurse Callahan was "a nurse or doctor." (Tr. at 198.) *See VanPatten*, 986 N.E.2d at 265 (if victims are older, "the appearance of the building, the exam room, and [nurse's] scrubs and job title would probably be sufficient circumstances from which to infer [the victims] were thus motivated to speak truthfully"). Thus, we find no abuse in discretion in the trial court's admission of Nurse Callahan's reiteration of B.E.'s description of Walter's assault pursuant to the medical treatment exception to the hearsay rules.

## Sentence Appropriateness

[14] Walters asserts his sentence is inappropriate. We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (citing Ind. Appellate Rule 7(B)). As we conduct our review, we consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), *trans. denied*. The appellant bears the burden of demonstrating his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[15] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The sentencing range for a Level 1 felony is "a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." Ind. Code § 35-50-2-4(c) (2014).[5] The sentencing range for a Level 4 felony is "a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." Ind. Code § 35-50-2-5.5 (2014). Walters requests we "reduce his sentence to slightly above the advisory sentence in each count." (Appellant's Br. at 11.)

[16] As to the nature of his offense, Walters first claims that, because the abuse only happened once and no physical injuries were found, he should not have been given the "maximum, fully executed sentence." (*Id*. at 1, 4, 9, 10, and 11.) Walters did not, however, receive the maximum possible sentence. He was given the maximum sentence for each conviction, but the four sentences were ordered served concurrently. His maximum possible sentence was 124 years, and he received only fifty. *Cf. Brown v. State*, 760 N.E.2d 243, 245 (Ind. Ct. App. 2002) (maximum sentence on both charges to be served consecutively indicates a maximum sentence), *trans. denied*.

---

[5] Two sentencing ranges for Level 1 felonies exist. *Compare* Ind. Code § 35-50-2-4(a) with Ind. Code § 35-50-2-4(c). The parties do not challenge Walter's crime falls into the longer of those two ranges.

[17]    Regardless, Walters violated the position of authority he had over B.E. by ordering B.E. to undress twice, requiring her to bathe, and threatening to spank her if she did not do as she was told. He violated his position of trust when he contrived to have B.E. alone for the night and perpetrated these crimes. He planned for these acts, as proven by the facts he rented the motel room prior to getting B.E. and gave C.E. an excuse for taking one child at a time. His molestation of B.E. included: "multiple digital touches of [B.E.]'s vagina, including penetration; forced oral sex; fondling and groping of her breasts and butt cheeks; and attempting to place her hand on his genitals, including brushing her knuckles against his penis through his underwear." (Appellee's Br. at 21.)

[18]    As to whether B.E. was injured, Walters is correct the physical examination did not reveal injury. However, B.E.'s mother, C.E., testified B.E. is now "leery of her own grandfather. Her own uncles." (Tr. at 448.) C.E. noticed B.E. "was real moody [and] she would get angry for no reason. She would be sad for no reason. She'd just cry. She'd be mad and stomp and she started scratching herself with sharp objects." (*Id.* at 449.)

[19]    We see nothing inappropriate about Walters' fifty-year sentence in light of Walters' violation of his position of trust, violation of his position of authority, his premeditation, the multiple acts he committed against B.E., and the injury done to her. *See Edrington v. State*, 909 N.E.2d 1093, 1101 (Ind. Ct. App. 2009) (violation of position of trust and non-physical injury is evidence to warrant an enhanced sentence), *trans. denied.*

[20] When considering the character of the offender,[6] one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.*

[21] Walters asserts his criminal history, although extensive, should not increase his sentence. Walters told the pre-sentence report investigator "he had only had prior criminal history in Terre Haute and Marion, Indiana[,]" (Conf. App. at 169), but the report shows Walters had history in seventeen Indiana counties and also in Michigan, Missouri, and Kentucky. The crimes listed in the report are mostly crimes of dishonesty. Contrary to Walters' assertion, his lifelong criminal history of deceptive behaviors is pertinent to this case. Walters used deception to gain the trust of B.E. and her parents, and he then violated that trust. This does not reflect well on his character.

[22] In light of Walters' character, including his violation of the position of trust and the position of authority, together with his criminal history, we see nothing inappropriate about his fifty-year sentence. *See Johnson v. State,* 986 N.E.2d 852,

---

[6] Walters now argues the fact he held the position of trust with B.E.'s family should be viewed as proof of his good character. However, violating such a position is correctly regarded as an aggravator. *See Robinson v. State*, 61 N.E.3d 1226, 1229 (Ind. Ct. App. 2016) (Robinson's "abuse of his position of trust . . . reflect[s] his poor character").

857 (Ind. Ct. App. 2013) (affirming sentence as not inappropriate based on criminal history).

# Conclusion

[23] As the evidence was not admitted in error and Walters has not demonstrated his sentence is inappropriate in light of his character and the nature of the offense, we affirm.

[24] Affirmed.

Kirsch, J., and Crone, J., concur.