

FILED

Sep 09 2019, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert W. Gevers II
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jordin C. Shoda, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 9, 2019 <br><br> Court of Appeals Case No. 18A-CR-2279 <br><br> Appeal from the Whitley Circuit Court <br><br> The Honorable Matthew J. Rentschler, Judge <br><br> Trial Court Cause No. 92C01-1707-F1-89 |

**Mathias, Judge.**

[1] Following a jury trial in Whitley Circuit Court, Jordin C. Shoda ("Shoda") was convicted of two counts of Level 1 felony child molesting and one count of

Level 4 felony child molesting. Shoda appeals and presents three issues for our review, which we restate as:

I.      Whether the trial court abused its discretion by admitting into evidence a video recording of an interview of the victim by a forensic examiner;

II.     Whether the trial court abused its discretion by admitting into evidence the testimony of a sexual assault nurse regarding statements the victim made to her; and

III.    Whether the trial court abused its discretion by admitting into evidence the testimony of the victim's therapist regarding statements the victim made to her.

We affirm.

## Facts and Procedural History

The victim in this case, A.E., is the daughter of Shoda and M.E. ("Mother"), and was born in May 2011. A.E. lived with Mother and had regular visitation with Shoda, who was born in February 1992. Shoda lived in the basement of his parents' home, which was finished and had a bathroom with a bathtub and shower. During Memorial Day weekend of 2017, Shoda's brother was getting married, and Mother agreed to let A.E. stay with Shoda so that A.E. could attend the wedding and be a member of the wedding party. Mother returned on Sunday to pick up A.E., and they went to Mother's father's house for Memorial Day activities.

[4]     On the way home from Mother's father's house, A.E. disclosed something to Mother, presumably the molestation, that upset Mother. Mother stopped at a friend's house, told her what A.E. had said, and called a child abuse hotline operated by the Department of Child Services ("DCS"). The hotline operator asked Mother certain questions, then asked Mother to take A.E. to the hospital. DCS informed the police of the report, and Whitley County Sheriff's Deputy Detective Bill Brice ("Detective Brice") requested that the child be taken to the Bill Lewis Center for Children (the "Center for Children") in Fort Wayne to be examined. Mother took A.E. to the Center for Children, where A.E. was examined by Sexual Assault Nurse Sarah Coburn ("Nurse Coburn").

[5]     Nurse Coburn examined A.E. and asked her non-leading questions, including "[D]o you know why you are here today," and "[D]o you have any concerns about your body." Tr. Vol. 3, p. 48. Nurse Coburn noted her interaction with A.E. as follows:

> "No one should touch your front." "When I was taking a shower with daddy he put his front in my back and it hurt." Patient points between buttocks to clarify "back." "I just said it hurt." "Then he said shush your mouth." Writer asked did this happen one time or more than one time. States "More than one time." "It's happened a bunch." "Only in the shower." "Since it flooded in our house I have to take showers with daddy." "He makes me touch his front with my hands." Writer asked how does that feel? States "It feels firm." "Stuff comes out of his front." "It's greenish-yellow." "At first he was doing it a bunch and then he stopped." "Then this weekend I had to do it again." "I told mommy."

Ex. Vol., State's Trial Ex. 3.[1] Even though she doubted that there would be any remaining DNA evidence, as the molestation had taken place while showering, Nurse Coburn took samples for a sexual assault kit per standard procedure.

[6] On the day after Memorial Day, May 30, 2017, Detective Brice asked Mother to take A.E. to the Center for Children again so that A.E. could be interviewed by Detective Lorrie Frieburger ("Detective Frieburger"), who worked at the Center for Children as a forensic interviewer. Detective Frieburger spoke with A.E. for approximately thirty minutes using the "Child First" protocol, which involves non-leading questions. In the video-recorded interview, A.E. told the detective that her father had put his "front" into her "back" when they were in the shower and that this hurt. Ex. Vol., State's Trial Ex. 1 at 07:21–07:26, 08:10.[2] A.E. said that this happened "a bunch of times," *id.* at 08:12–08:17, and "every single time" she was with her father. *Id.* at 25:42–25:45. Using diagrams, A.E. explained to Detective Frieburger that by "front" she meant her father's genitals, and by "back" she meant her anal area. *Id.* at 11:00–11:28. A.E. stated that this caused her pain because Shoda "digs down there really, really, really far." *Id.* at 26:50–26:53. When A.E. complained of the pain, Shoda told her to "shush your mouth." *Id.* at 17:06–17:22. A.E. stated that she had noticed blood

---

[1] The quotations apparently indicate A.E.'s words.

[2] We refer to the time index of the video file itself, not the time code included in the video, which starts at 16:37:59—apparently the time the interview took place in the twenty-four hour "military" time system. Thus, A.E. made the statement regarding her father at seven minutes and twenty-one seconds into the video recording, which corresponds to a time of 16:45:21.

on the toilet paper after wiping herself following the molestation. A.E. further disclosed that her father made her put her mouth and hands on his penis. A.E. also told Detective Frieburger that Shoda had started molesting her when she was five years old and that he warned her not to tell anyone about what he did to her. A.E. said that she informed her mother of what had happened because the last time it had occurred, it had been very painful.

[7] A.E. later underwent treatment by Nicole Trier ("Trier"), a licensed mental health therapist. During her sessions with Trier, A.E. described, in age-appropriate language, what appeared to be anal sex with her father.

[8] On July 19, 2017, the State charged Shoda with two counts of Level 1 felony child molesting and one count of Level 4 felony child molesting. On February 16, 2018, the State filed a notice of its intent to introduce A.E.'s recorded statements to Detective Frieburger under the protected persons statute, Indiana Code section 35-37-4-6. The trial court held a protected persons hearing on June 28, 2018, at which time the State presented the testimony of several witnesses, including Mother, Detective Frieburger, Trier, and A.E. The State asked no questions of A.E. at the hearing, but Shoda's counsel did question A.E. The trial court took the matter of the admissibility of A.E.'s recorded statement to Detective Frieburger under advisement. On July 3, 2018, Shoda filed an objection to the State's request to offer the video recorded statement into evidence under the protected persons statute. Two days later, the trial court entered an order concluding that A.E.'s statement was admissible.

[9] A three-day jury trial began on July 17, 2018. Immediately before the trial began, Shoda referenced a pre-trial motion in limine that he had filed, stating:

> [W]e filed both a motion and a memorandum of law. And, obviously this Court had an extended protect[ed] person hearing, we know that the Court has ruled on the um, the admission of the video taped statement of A.E. by the forensic interviewer and that's going to come in. Um, a**t the appropriate time I guess, um, I don't think maybe it's now, but before the tape is played I will want to renew my objection and make a continuing objection of that to preserve the record**.

Tr. Vol. 2, pp. 161–62 (emphasis added). After granting Shoda's motion in limine with regard to references to a polygraph examination and prior criminal history, the trial court stated:

> And in terms of the statements of the alleged victim in this case, the law has provided for the jury to hear the allegations made by the child on video. But anything said to anybody outside of that video tape, including mother, counselor or anyone else will not come into evidence because it constitutes hearsay.

*Id*. at 163.

[10] Despite indicating that he would object to the admission of the video-recorded interview, Shoda referenced the recording in his own opening statement:

> We all just heard the cress [sic] of the State's case will be the video tape. **That tape will be played, there's no dispute. You'll hear it in its entirety. The good, the bad, the ugly.** By way of summary that tape, that was made more than a year ag[o]. Okay?

It was made around May 30, 2017. That's, that's the day after Memorial Day, last year. It's not too long. It's maybe a half hour or so. A.E. is six (6) years old. She's uh, she's verbal. We'll see on tape . . . a cute, adorable little girl. And she says, and she says these things happened to her by her dad. To A.E. she has, she has two (2) dads in her life. She has her biological father, Jordin and she uh, and she also has a stepfather. So questions are, are []posed to A.E. to try and clarify it. And she's also asked about the location, right? The location. Where did this happen? My words, not her's you'll see on the tape. And A.E. tells us, at first she [says], it happens at everyone's house. And then she clarifies later on, clarifies and points at the drawings and says, you know it's dad Jordin's house. Um, she does then disclose a physical sexual assault by her dad in the shower, all right. And among [the] things she says, as you will hear on the tape, that he put his back, or put his front on her back, put his front on her back. And the tape does say that it happened every single time she's there. Not sometimes, not this 18 months ago, every, every single time she's there. So when is the last time A.E. was there, all right? With Jordin? Let's start there. There will be no dispute that's the, that's the weekend before Memorial Day last year. It was that Friday through Sunday, okay? And towards the end of this tape, the interviewer will confirm from A.E., you'll hear, that this last time, it's the day she told her mom. It happened that day and it hurt. All right? And we'll find out that day, all right? The day, that's that Sunday. That's the, that's May 28, the day before Memorial Day. **And so, in large part, that's on the tape. That's what we're going to hear**.

*Id.* at 175 (emphases added). When the video recording was offered into evidence, the record does not indicate that Shoda made any objection.[3] *See id.* at 183–84.

[11]    Shoda did object on the record, however, when the State offered into evidence the notes taken by Nurse Coburn during her examination of A.E. at the Center for Children. The trial court overruled the objection, and the notes were admitted into evidence. Shoda similarly objected to the admission of the statements made by A.E. during her therapy with Trier, which the trial court also overruled.

[12]    At the conclusion of the trial, the jury found Shoda guilty as charged. On August 27, 2018, the trial court sentenced Shoda to concurrent terms of forty years of incarceration on the Level 1 felony convictions and a concurrent term of twelve years on the Level 4 felony conviction. Shoda now appeals.

## Standard of Review

[13]    All of Shoda's appellate arguments claim error in the admission of evidence. Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we review the court's decision only for an abuse of that

---

[3] The transcript reveals that when the prosecuting attorney moved to admit the recording into evidence, Shoda's counsel asked to approach the bench. Tr. Vol. 2, p. 183. The transcript then simply notes that a "bench conference" was held, with no indication as to whether the bench conference was recorded and transcribed. *Id.* If Shoda did object to the admission of the recording at this bench conference, it is not in the transcript.

discretion. *Shelby v. State*, 986 N.E.2d 345, 359 (Ind. Ct. App. 2013), *trans. denied*. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*.

## Admission of A.E.'s Recorded Statement

[14]    Shoda first argues that the trial court abused its discretion by admitting into evidence Detective Freiburg's video-recorded interview of A.E. at the Center for Children. Shoda contends that the trial court erred in admitting this interview under the protected persons statute because A.E.'s non-responsiveness to his questioning at the protected persons hearing made her effectively unavailable for cross-examination. The State argues that Shoda failed to preserve any error in the admission of the video because he failed to make a contemporaneous objection when the video was admitted into evidence.

[15]    It is axiomatic that to preserve a claim of evidentiary error for purposes of appeal, a defendant must make a contemporaneous objection at the time the evidence is introduced. *Laird v. State*, 103 N.E.3d 1171, 1175 (Ind. Ct. App. 2018), *trans. denied* (citing *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010)). Here, Shoda filed a pretrial objection to the State's request to offer the video-recorded statement into evidence under the protected persons statute. And immediately before trial began, Shoda noted his intention to "renew" his objection to the admission of the recording and his desire to make a continuing

objection in order to "preserve the record." Tr. Vol. 2, pp. 161–62. But it is well settled that pretrial motions do not preserve any error for appeal. Our supreme court in *Brown* reiterated that "[a] contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress." 929 N.E.2d at 207 (citing *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000); *Wagner v. State*, 474 N.E.2d 476, 484 (Ind. 1985)). This rule is no mere procedural technicality; instead, its purpose is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. *Laird*, 103 N.E.3d at 1175 (citing *Brown*, 929 N.E.2d at 207).

[16]     Here, there is no indication in the transcript that Shoda made a contemporaneous objection to the admission of the recording. Shoda even referenced the tape in his opening statement, presuming that the tape would be admitted into evidence. As noted above, when the State moved to admit the recording into evidence, Shoda requested a bench conference, but the contents of that conference do not appear to have been recorded or transcribed. Nor did Shoda make an objection on the record following the bench conference.

[17]     We were presented with a similar situation in *Delao v. State*, 940 N.E.2d 849 (Ind. Ct. App. 2011), *trans. denied*. In that case, the trial judge informed the parties prior to trial that, due to the setup of the courtroom, it was difficult to record bench conferences without the jury being able to overhear. The judge therefore instructed the parties that, if a bench conference was required, it

would probably be necessary to recess and remove the jury from the courtroom before making any arguments. During trial, when the State offered several audio recordings into evidence, the defendant did not object on the record but instead requested to approach the bench. As the trial court had indicated would happen, the subsequent bench conference was not recorded. Immediately thereafter, the trial court stated for the record that the defendant had objected on grounds of relevancy.

[18] On appeal, Delao stated that his objection was based on grounds that "key parts of the recordings, and the translation of same for the jury, were of sufficiently poor quality so as to be confusing and misleading to the jury." *Id*. at 852 (citation and internal quotation marks omitted). We declined Delao's offer to speculate about what the specific basis of his objections had been and held that Delao had failed to properly preserve his claim of evidentiary error. *Id*. We noted that "'the appellant carries the burden of presenting a record for sustaining his argument.'" *Id*. (quoting *House v. State*, 535 N.E.2d 103, 109 (Ind. 1989)). In support of our decision, we cited *House*, a case in which our supreme court held that an objection made during an unrecorded sidebar conference was not preserved and that the defendant should have corrected any deficiency in the record according to the appellate rule allowing for reconstruction of allegedly missing portions of the transcript. 535 N.E.2d at 109; *see also* Ind. Appellate Rule 31 (setting forth the procedure for making a statement of the evidence when no transcript of all or part of the evidence is available).

[19] Following our holding in *Delao*, we conclude that Shoda has failed to preserve any claim of error because he failed to make a contemporaneous objection nor has he presented us with a record sufficient to demonstrate that he did preserve his claim of error. *But see Kien v. State*, 782 N.E.2d 398, 406 (Ind. Ct. App. 2003), *trans. denied* (noting that the lack of a record justifies giving the appellant the benefit of the doubt in speculating about what may have been discussed during any unrecorded sidebar conference) (citing *Ben-Yisrayl v. State*, 753 N.E.2d 649, 661 (Ind. 2001)).

[20] Even if we were to consider Shoda's claim on the merits, he would not prevail. Indiana Code section 35-37-4-6, known as the "protected person statute," provides a list of certain conditions under which evidence that would otherwise be inadmissible will be allowed in cases involving certain crimes against "protected persons." *J.A. v. State*, 904 N.E.2d 250, 255 (Ind. Ct. App. 2009), *trans. denied*. Among the crimes to which the protected person statute applies are sex crimes under Indiana Code chapter 35-42-4, which includes child molesting.[4] *Id.* at 255 n.4. A "protected person" is defined to include "a child who is less than fourteen (14) years of age." I.C. § 35-37-4-6(c)(1).

[21] Subsection (d) of the protected person statute provides that

> A statement or videotape that:

---

[4] *See* Ind. Code § 35-42-4-3 (defining the crime of child molesting).

(1) is made by a person who at the time of trial is a protected person;

(2) concerns an act that is a material element of [a listed group of offenses that includes child molesting] that was allegedly committed against the person; and

(3) is not otherwise admissible into evidence;

is admissible in evidence in a criminal action for [a listed group of offenses that includes child molesting] if the requirements of subsection (e)[5] are met.

I.C. § 35-37-4-6(d).

---

[5] Subsection (e) of the protected persons statute provides:

A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:
(1) The court finds, in a hearing:
(A) conducted outside the presence of the jury; and
(B) attended by the protected person in person or by using closed circuit television testimony as described in section 8(f) and 8(g) of this chapter;
that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.
(2) The protected person:
(A) testifies at the trial; or
(B) is found by the court to be unavailable as a witness for one (1) of the following reasons:
(i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.
(ii) The protected person cannot participate in the trial for medical reasons.
(iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.

I.C. § 35-37-4-6(e). Shoda makes no argument that the requirements of subsection (e) were not met.

[22]    Subsection (f) of the protected persons statute, which is at issue here, provides:

> If a protected person is unavailable to testify at the trial for a reason listed in subsection (e)(2)(B), a statement or videotape may be admitted in evidence under this section **only if the protected person was available for cross-examination**:
>
> (1) **at the hearing described in subsection** (e)(1); or
>
> (2) when the statement or videotape was made.

I.C. § 35-37-4-6(f) (emphasis added). Thus, before a recorded statement by a protected person may be admitted into evidence at trial, the protected person must have been available for cross-examination either when the statement or video was made or at the protected persons hearing.

[23]    In the present case, A.E. was not subject to cross-examination at the time the video was made. But she was present and subject to cross-examination at the protected persons hearing. Shoda claims, however, that A.E. was effectively unavailable for cross-examination because she "shut down" and would not answer questions regarding her father or any inappropriate touching. Appellant's Br. at 13. We disagree with this characterization of A.E.'s testimony at the protected persons hearing.

[24]    After asking some preliminary questions about A.E.'s family and school, Shoda's counsel and A.E. engaged in the following exchange:

Q. All right A.E. A.E. we talked about this when we met last time. I want to make sure I understand you. Are there, are there parts on our body where no one should touch us?

You have to answer out loud. Is that a yes?

A. Yes.

Q. Okay. What do you, what do you call those parts?

A. I don't know.

Q. Do you like to swim?

A. Hm, hm (affirmative answer).

Q. All right. And when you go swimming, you wear a swimsuit?

A. Hm, hm (affirmative answer).

Q. Yeah. Of course you do. And those swimsuit, that swimsuit that covers, covers up your private parts, right? Is that a yes?

A. Hm, hm (affirmative answer).

Q. Yes. Should, no[]one should touch our swimsuit parts, right? No[]one should touch underneath our swimsuits, correct?

A. Hm, hm (affirmative answer).

Q. Is that yes?

A. Yeah.

**Q. All right. Has anyone touched you under your swimsuit parts? It's okay to answer it. Has anyone touched you underneath swimsuit parts? (Inaudible) under your swimsuit? A.E. [your] dad's name is Jordin, right? Has Jordin ever touched under your swimsuit parts? A.E. you know, you know the difference right, you're seven (7) years old, you're almost as old as me. You gave (inaudible) when I told (inaudible) didn't you? You thought that was really funny, do you remember (inaudible)? Did you (inaudible).**

**A. What?**

Q. How old do you think I was?

A. 50?

Q. 50, gosh good for you. Very good. Um, do you know the difference between a good touch and bad touch? Yeah? All right. Well if you're mom gives you a hug and kiss?

A. Hm, hm (affirmative answer).

Q. Is that a good touch or a bad touch? Let me ask you another question. I'm sorry? What did you say? Did you say something?

Q. Uh, uh (negative answer).

A. No? If the dog, all right, if a dog bites your leg?

A. Hm, hm (affirmative answer).

Q. Bites on your leg and hurts you. Is that a good touch or a bad touch?

Tr. Vol. 2, pp. 148–50 (emphasis added). A bench conference was then held, after which Shoda's counsel asked A.E. regarding pictures she had drawn.

[25] As the above-emphasized portion of this exchange indicates, it appears as if A.E. simply didn't understand the questions asked of her. When she responded by asking "What?" Shoda simply switched his line of questioning and never revisited the questions regarding the touching. Nor did he ask the trial court to emphasize to A.E. that she needed to answer Shoda's questions as best she could. We are therefore unable to conclude that Shoda has established that A.E. was truly unavailable for cross-examination.

[26] We rejected a similar argument in *Perryman v. State*, 80 N.E.3d 234 (Ind. Ct. App. 2017). In *Perryman*, the defendant was convicted of battery and neglect of

his girlfriend's eight-year-old son. At Perryman's trial, the trial court had admitted a recorded interview with the child after holding a protected persons hearing at which the child was subject to cross-examination. On appeal, Perryman argued *inter alia* that the admission of the child's recorded statement under the protected persons statute was unconstitutional because the child's alleged inability to provide "any coherent and meaningful testimony about the cause of his injuries" at the protected persons hearing denied Perryman the opportunity for "full, adequate, and effective cross examination." *Id*. at 246 (citations and internal quotation marks omitted).

[27] In rejecting Perryman's argument, we noted that "[w]hether the opportunity was full and fair is an inquiry into whether the state or the trial court impermissibly limited a defendant's cross-examination of the witnesses against him, not an inquiry into the mental faculties of those witnesses or the character of their testimony." *Id*. Even a witness's lapses of memory do not constitute a deprivation of the right to cross-examine. *Id*. (citing *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985) ("It does not follow [from the requirement that a defendant be allowed the opportunity to impeach a witness on cross-examination] that the right to cross-examine is denied by the State whenever the witness'[s] lapse of memory impedes one method of discrediting him.")). As explained by the United States Supreme Court:

> The Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense

might wish. . . . It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination) the very fact that he has a bad memory. . . . The weapons available to impugn the witness'[s] statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee.

*United States v. Owens*, 484 U.S. 554, 559–60 (1988) (quoted in *Perryman*, 80 N.E.3d at 246–47); *see also Fowler v. State*, 829 N.E.2d 459, 466 (Ind. 2005) (holding that a defendant cannot claim a denial of the opportunity for cross-examination by a recalcitrant trial witness's refusal to answer unless the defendant seeks to compel testimony), *abrogated in part on other grounds by Giles v. California*, 554 U.S. 353 (2008).

[28]  Two decisions of this court have held that there was an unconstitutional frustration of the opportunity for cross-examination in the context of the protected persons statute, and both involved the trial court finding that the protected person was unavailable due to his or her incapability of understanding the nature and obligation of an oath, not simply because of lapsed memory or non-responsiveness. *Perryman*, 80 N.E.3d at 247 (citing *Anderson v. State*, 833 N.E.2d 119, 126 (Ind. Ct. App. 2005); *Purvis v. State*, 829 N.E.2d 572, 581 (Ind. Ct. App. 2005), *trans. denied*). These cases are inapplicable here, because the trial court found that A.E. was capable of distinguishing truth from falsehood. *See Perryman*, 80 N.E.3d at 247 (distinguishing *Anderson* and *Purvis* because the

witness was not found incapable of understanding the nature of his oath and instead affirmatively demonstrated his capacity to distinguish truth from falsehood and to appreciate the importance of that distinction); *see also Pierce v. State*, 677 N.E.2d 39, 48 (Ind. 1997) (holding that child witness was available for cross-examination where she was on the witness stand during the protected persons hearing, the court did nothing to prevent the defense from questioning her, yet the defense conducted no actual cross-examination).

[29]    In summary, Shoda was not deprived of his right to confrontation simply because A.E. did not understand some of the questions put to her on cross-examination at the protected persons hearing. Neither the State nor the trial court did anything to impair Shoda's ability to cross-examine A.E. Moreover, any lapses in A.E.'s memory or her unresponsiveness did not amount to a denial of the right to cross-examine. *See id.* Therefore, the trial court did not abuse its discretion by admitting A.E.'s statements into evidence under the protected persons statute.

## A.E.'s Statement to Nurse Coburn

[30]    Shoda next argues that the trial court abused its discretion by admitting into evidence Nurse Coburn's notes and testimony regarding what A.E. told her during the sexual assault examination. Shoda claims that the admission of this evidence was improper for a variety of reasons.

[31] He first contends that the admission of Nurse Coburn's notes and testimony regarding what A.E. told her was improper because the State failed to comply with the notice provisions of the protected persons statute. Subsection (g) of the statute provides that a protected person's statement may not be admitted into evidence under the statute "unless the prosecuting attorney informs the defendant and the defendant's attorney at least ten (10) days before the trial of: (1) the prosecuting attorney's intention to introduce the statement or videotape in evidence; and (2) the content of the statement or videotape." I.C. § 35-37-4-6(g).

[32] However, Shoda made no such objection at trial. Instead, he based his objection on grounds that the State had not met the requirements of Indiana Evidence Rule 803(4). Specifically, his counsel stated:

> We object your Honor, we do not believe that the foundational requirements had been met under the, under the Indiana trial rules of evidence. Um, specifically 803(4). Um, and that the two (2) prongs, the first prong of that test with respect to whether the declarant was motivated by truthful information for treatment and diagnosis, I don't believe there is a sufficient foundation. Um, and it would be impermissible hearsay.

Tr. Vol. 3, p. 51. "A party may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on a different ground." *Casady v. State*, 934 N.E.2d 1181, 1191 (Ind. Ct. App. 2010) (citing *Malone v. State*, 700

N.E.2d 780, 784 (Ind. 1998)), *trans. denied*. By not raising this objection at trial, Shoda has waived it for purposes of appeal.

[33] Waiver notwithstanding,[6] Shoda's argument is misplaced. The protected persons statute is applicable when evidence is otherwise *inadmissible*. That is, it permits, under certain circumstances, the admission of otherwise inadmissible evidence. *See* I.C. § 35-37-4-6(d) (providing that a statement or videotape made by a protected person and concerning an act that is a material element of a listed offense and "is not otherwise admissible in evidence" is admissible if the requirements of subsection (e) are met); *see also Tyler v. State*, 903 N.E.2d 463, 465 (Ind. 2009) (noting that the protected persons statute allows for the admission of otherwise inadmissible hearsay). The implication of this is that if the hearsay is admissible through the rules of evidence, the protected persons statute is inapplicable. *See Coomer v. State*, 575 N.E.2d 683, 685 (Ind. Ct. App. 1991) (holding that protected persons statute was inapplicable where child's prior testimony was admissible under exception to the hearsay rule). Because we conclude *infra* that A.E.'s statements were admissible under the exception to the hearsay rule in Evidence Rule 803(4), Shoda's argument regarding the protected persons statute are misplaced.

[34] Shoda also argues that A.E.'s statements to Nurse Coburn do not meet the requirements for admissibility under Evidence Rule 803(4), which provides that

---

[6] Shoda makes no argument of fundamental error regarding the admission of this evidence.

a statement is not excluded by the hearsay rule, "regardless of whether the declarant is available as a witness," if the statement:

(A) is made by a person seeking medical diagnosis or treatment;

(B) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

(C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

[35] This medical treatment or diagnosis exception is "'based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely that the declarant would mislead the medical personnel [] she wants to treat her.'" *Ramsey v. State*, 122 N.E.3d 1023, 1030 (Ind. Ct. App. 2019), *trans. denied* (quoting *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*). "In order to satisfy the requirement of the declarant's motivation, the declarant must subjectively believe that he or she was making the statement for the purpose of receiving medical diagnosis or treatment." *Id*. at 1031 (citing 13 Robert Lowell Miller Jr., *Indiana Practice: Indiana Evidence* § 803.104 at 312 (4th ed. 2018)). As we explained in *Ramsey*:

> There is a two-step analysis for determining whether a statement is properly admitted under Indiana Evidence Rule 803(4): "(1) whether the declarant is motivated to provide truthful information in order to promote diagnosis and treatment; and (2) whether the content of the statement is such that an expert in the field would reasonably rely upon it in rendering diagnosis or treatment."

*Id.* (quoting *Palilonis*, 970 N.E.2d at 726).

[36] "Statements made by victims of sexual . . . molestation about the nature of the . . . abuse—even those identifying the perpetrator—generally satisfy the second prong of the analysis because they assist medical providers in recommending potential treatment for sexually transmitted disease, pregnancy testing, psychological counseling, and discharge instructions." *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013) (citing *Palilonis*, 970 N.E.2d at 726–27).

[37] The first prong—regarding the declarant's motivation—can generally be inferred from the fact a victim sought medical treatment. *Walters v. State*, 68 N.E.3d 1097, 1100 (Ind. Ct. App. 2017) (citing *VanPatten*, 986 N.E.2d at 260–61), *trans. denied*. However, when young children are brought to a medical provider by their parents, the inference of the child's motivation may be less than obvious, as the child may not understand the purpose of the examiner or the relationship between truthful responses and accurate medical treatment. *Id.* at 1100–01 (citing *VanPatten*, 986 N.E.2d at 260–61). In such situations, "evidence must be presented to show the child understood the medical professional's role and the importance of being truthful." *Id.* at 1101. "Such evidence may be presented 'in the form of foundational testimony from the medical professional detailing the interaction between [her] and the declarant, how [she] explained [her] role to the declarant, and an affirmation that the declarant understood that role.'" *Id.* (quoting *VanPatten*, 986 N.E.2d at 261) (alterations in *Walters*).

[38]    In *VanPatten*, our supreme court held that the State had not established that the six-year-old victims understood the importance of telling the nurse the truth in order to get accurate medical treatment. *VanPatten,* 986 N.E.2d at 265. The nurse had observed the police interviews, the medical examination had been directly preceded by extensive interviews at the DCS, and the children themselves did not testify that they had understood the nurse's role. *Id*. at 266. Moreover, the nurse was unable to testify regarding what she said to the victims, how they responded, and if they understood the situation. *Id*. at 266–67; *see also Walters*, 68 N.E.3d at 1101 (summarizing *VanPatten*).

[39]    Shoda claims that here, as in *VanPatten*, the State failed to establish that A.E. understood the importance of telling the truth to Nurse Coburn in order to get accurate medical treatment. We disagree.

[40]    Here, A.E. had not been forensically examined by the police or a therapist prior to her statements to Nurse Coburn. Instead, she was given a sexual assault examination immediately after disclosing the molestation. *Cf. VanPatten*, 986 N.E.2d at 265 (noting that a prior forensic interview by DCS "mudd[ied] the issue of whether the underlying motivation even from their parents was to seek medical treatment for their children or to assist the police in their investigation."). Nor did Nurse Coburn observe any prior forensic interview of A.E. before her interaction with A.E. *Cf. id.* (noting that nurse's admission that she observed prior DCS interview before she spoke with the victims "rais[ed]

the concern that [the nurse's] questioning may have steered the answers to support the allegations brought up in the interview.").

[41] We agree with the State that A.E.'s experience was similar to that of any child taken to see medical personnel after disclosing an injury. Mother testified at the protected persons hearing[7] that the medical staff at the Center for Children explained to A.E. that "they were going to take [A.E.] back to the appointment area, doctor's office." Tr. Vol. 2., p. 13.

[42] In *VanPatten*, the examining nurse testified as to what her standard procedures were but did not record this in the report used to refresh her memory at trial. This, the court held, "undercut" the court's ability to infer that the children were motivated to respond truthfully to the nurse's questions because they understood her professional role. *VanPatten*, 986 N.E.2d at 266.

[43] Here, Nurse Coburn testified as to her usual practice:

> I do explain to children that I'm a nurse and that it's my job to make sure that their body's okay. I do explain that I will be taking a look at their body at the top of their head all the way down to their toes, but that I won't do anything without their permission. I also ask the child if they understand what a nurse does.

---

[7] As noted by the State, a trial court may consider evidence from a pre-trial hearing when ruling on the admissibility of evidence at trial. *Kelley v. State,* 825 N.E.2d 420, 426 (Ind. Ct. App. 2005).

Tr. Vol. 3, p. 47. And, in contrast to the nurse in *VanPatten*, Nurse Coburn's usual practices were recorded in her report. Specifically, she indicated in her report how she explained the role of a nurse and the examination to A.E. and discussed why nurses need to know what happened for purposes of medical treatment. Ex. Vol., State's Trial Ex. 3. Nurse Coburn also indicated in her report that A.E. understood Coburn's role as a nurse and the purpose of the examination and treatment. *Id*. Specifically A.E. indicated her understanding by saying, "Nurses check you for strep throat." *Id*. Thus, even though Nurse Coburn could not recall the exact words she spoke to A.E., her standard procedure, confirmed by her contemporaneous notes, sufficiently establish that she explained to A.E. her role as a nurse and that A.E. understood that her statements to Nurse Coburn were for the purpose of medical treatment.

[44] The trial court could reasonably conclude from these facts and circumstances that A.E. was motivated to provide truthful information to Nurse Coburn to promote medical diagnosis and treatment. Thus, we are unable to say that the trial court abused its discretion in concluding that A.E.'s out-of-court statements to Nurse Coburn were admissible under the exception to the hearsay rule contained in Evidence Rule 803(4). *See Walters*, 68 N.E.3d at 1101 (holding that trial court did not abuse its discretion by admitting evidence of child victim's statement to nurse where nurse had not attended any previous interview with the child, the physical examination took place on a different day than the forensic interviews, the nurse was able to recall how she explained her

role to the child, and the interview took place in a building similar to a doctor's office separate from law enforcement agencies); *Cooper v. State*, 714 N.E.2d 689, 694 (Ind. Ct. App. 1999) (holding that trial court did not abuse its discretion by admitting evidence of child's out-of-court statement to nurse where child knew that she was in the emergency room for an examination due to her having been molested and where child understood the professional role of the nurse and doctor who examined her, triggering the motivation to provide truthful information), *trans. denied*.

## A.E.'s Statements to Her Therapist

[45] Lastly, Shoda argues that the trial court abused its discretion by admitting evidence of A.E.'s out-of-court statements to her therapist, Trier. He first claims, as he did with regard to A.E.'s statement to Nurse Coburn, that this evidence was inadmissible because the State failed to give the required notice under the protected persons statute. Yet again, however, there is no indication in the record that Shoda objected on these grounds at trial. This argument is therefore waived for purposes of appeal. *See Casady*, 934 N.E.2d at 1191 (citing *Malone*, 700 N.E.2d at 784). And again, the purpose of the protected persons statute is to allow, under certain circumstances, evidence that is otherwise *inadmissible* under the Rules of Evidence. Thus, if A.E.'s statements to Trier are admissible under Evidence Rule 803(4), the protected persons statute is inapplicable. *See Tyler*, 903 N.E.2d at 465; *Coomer*, 575 N.E.2d at 685.

[46] Shoda also argues that A.E.'s statements to Trier did not meet the foundational requirements of Evidence Rule 803(4). In support of his argument, he relies on the decision of our supreme court in *McClain v. State*, 675 N.E.2d 329 (Ind. 1996). In that case, the trial court had permitted a family therapist to testify that the victim had told her that "someone had put their mouth on, I believe his term the first time was, his private part." *Id.* at 330 (citation omitted). On appeal, the defendant argued that this statement did not fall within the ambit of Evidence Rule 803(4).

[47] The *McClain* court noted that, in order to qualify as a statement made to promote diagnosis or treatment, "there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information." *Id.* (citing *United States v. Barrett*, 8 F.3d 1296, 1300 (8th Cir. 1993). In *McClain,* there was no such evidence. Specifically, there was no evidence that the victim sought the therapist's help or believed that he was receiving any treatment. Instead, the child victim testified that the therapist was his "counselor" and that he talked to her about what McClain had done to him. *Id.* Accordingly, the court held that "the record is devoid of any evidence showing that the victim understood that he was speaking to a trained professional for the purposes of obtaining diagnosis of, or providing treatment for, emotional or psychological injuries." *Id.*

[48]  Here, however, there is evidence indicating that A.E. knew that she was speaking to a trained professional for the purpose of obtaining treatment. Trier testified that she explained to A.E. why they were meeting:

> I explained to her that I was a play therapist and I often when bad, sad or scary things happen with kids, that it feels good to talk about that with, with someone who is trained to talk about those things. And we share a book, that's part of that trauma curriculum, that explains what play therapy is, showed her around the room and encouraged her that this was a place that was safe to talk about anything that she wanted to talk about.

Tr. Vol. 3, p. 78. Trier also explained to A.E. the purpose of "what we do" and explained mental health to her. *Id.* at 80. A.E. appeared to understand the therapeutic purpose behind her interaction with Trier. *See id.* at 79 (Trier agreeing that A.E. understood "the therapeutic purpose behind what [Trier] was doing.").

[49]  Because there was evidence that A.E. understood that she was speaking with Trier for the purpose of obtaining treatment for her psychological or emotional trauma, we cannot say that the trial court abused its discretion by concluding that A.E.'s statements to Trier were made for and pertinent to medical treatment. *See In re A.F.*, 69 N.E.3d 932, 948 (Ind. Ct. App. 2017) (holding that trial court did not abuse its discretion by admitting evidence of child's out-of-court statement to therapist where the record established that the child understood that she was someplace safe, the therapist explained that therapy

was a means by which the child could work to solve problems, and that the therapist was there to help her), *trans. denied*. Accordingly, the trial court did not abuse its discretion by admitting Trier's testimony recounting A.E.'s statements regarding Shoda's molestation during the therapy sessions.[8]

## Conclusion

The trial court did not abuse its discretion by concluding that A.E.'s statements during the forensic interview were admissible under the protected persons statute, because A.E. was available for cross-examination at the protected persons hearing. Nor did the trial court abuse its discretion in the admission of A.E.'s statements to Nurse Coburn or to her therapist, Trier, as those statements fell within the exception to the hearsay rule for statements made for the purpose of medical diagnosis or treatment. Accordingly, we affirm the judgment of the trial court.[9]

Affirmed.

May, J., and Brown, J., concur.

---

[8] Although Shoda also claims that the trial court erred by admitting a picture drawn by A.E. during her therapy with Trier, he does not fully develop this argument, and we therefore consider it waived.

[9] Because we reject Shoda's claim that the admission of this evidence was improper, we need not address his argument that any error was not harmless.