

IN THE

# Court of Appeals of Indiana

Dominick D. Jones,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Sep 22 2025, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

September 22, 2025

Court of Appeals Case No.
24A-CR-2608

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-2001-F1-3

**Opinion by Chief Judge Altice**
Judges Pyle and DeBoer concur.

**Altice, Chief Judge.**

## Case Summary

Dominick D. Jones appeals his convictions for three counts of Level 1 felony child molesting, and one count of Level 4 felony child molesting, challenging the sufficiency of the evidence. He also challenges the trial court's deprivation of his good time credit and claims that his 120-year aggregate sentence is inappropriate under Ind. Appellate Rule 7(B).

We affirm in part, reverse in part, and remand with instructions that the trial court calculate the amount of pretrial credit days that Jones is owed and to issue a revised sentencing order that reflects the same.

## Facts and Procedural History

When Victim 1[1] was five years old in 2011, her mother (Mother) began dating Jones. Several months later, Jones moved in with Mother and her children, including Victim 1, who considered Jones a "father type figure." *Transcript Vol. II* at 179.

Sometime in 2013, Jones moved from Mother's Elkhart home. In 2014, Jones and Mother had a son (Child) together. While Jones initially had nothing to do with Child, he became involved after Child turned two.

---

[1] The victim in this case is identified only as "Victim 1" in the affidavit for probable cause, the charging informations, at trial, and by both parties in their appellate briefs. We do the same.

[5] In June 2018, Child started frequent overnight visits with Jones. As Child was uncomfortable going alone, Victim 1—who was nearly twelve years old—also went on the visits. Over the course of nearly a year, Jones touched Victim 1 inappropriately "[a]lmost every time" she went to his house. *Transcript Vol. IV* at 225. On one occasion, Jones entered the bathroom while Victim 1 was showering and touched her breasts and vagina with his hand. He also penetrated Victim 1's vagina with his fingers. On several occasions, Jones touched Victim 1's vagina with his mouth and penetrated her vagina with his tongue. Jones also penetrated Victim 1's vagina with sex toys.

[6] On March 28, 2019, Victim 1 told Mother about the incidents and stated that she no longer wanted to go to Jones's residence because he was "touching [her in] places that [she] didn't want to be touched." *Transcript Vol. II* at 183. Mother took Victim 1 to the hospital the next morning, where Dr. Donald Zimmer conducted a sexual assault examination. Victim 1 reported to Dr. Zimmer that Jones had sexually assaulted her on multiple occasions over a one-year period. On the day of the examination, Victim 1 stated that she had not had contact with Jones for the previous two months. DNA evidence was not collected because of the amount of time that had passed since the last assault.

[7] Dr. Zimmer noted that Victim 1's hymen was not intact, that she tested positive for bacterial vaginosis, and that he would not have expected to see a disrupted hymen or that type of infection in a female of Victim 1's age. Dr. Zimmer testified that a disrupted hymen could be "absolutely indicative of penetration." *Transcript Vol. IV* at 78-79. A forensic interview was conducted on April 3,

2019, where Victim 1 reported that Jones used penis-shaped purple and black sex toys during some instances of abuse.

[8] At some point thereafter, police officers obtained a search warrant for Jones's residence. During the search, Jones informed them of the location of a box of sex toys. Officers found items including artificial penises and vaginas in a room next to the main bedroom.

[9] On April 24, 2019, Jones voluntarily came to the police department and spoke with detectives. He stated that no one should have known about the contents of his box of sex toys unless they were "snooping around his home." *Transcript Vol. III* at 86. Jones also claimed that he had never used the sex toys, it was a "fantasy thing," and that there was "no way" that Victim 1 could have described the contents of the box. *Id.* at 86-87, 122. Detectives sent three of the sex toys from the box for DNA testing. The results showed that there was limited support for the exclusion of DNA belonging to Jones or Victim 1 on one of the sex toys. The quantity of DNA on the other items was insufficient for further analysis.

[10] Victim 1 attended eight therapy sessions between January 2020 and April 2021. She was diagnosed with post-traumatic stress disorder, and the therapist noted that Victim 1 was so traumatized that she no longer wanted to shower or bathe.

[11] On January 21, 2020, the State charged Jones with six counts of child molesting as a Level 1 felony and one count of child molesting as a Level 4 felony. Count I alleged that Jones penetrated Victim 1's vagina with his penis and

Count II alleged that he penetrated her vagina with his fingers. Count III alleged that Jones forced Victim 1 to perform oral sex on him, Count IV alleged that he performed oral sex on Victim 1, Count V alleged that he penetrated her vagina with his penis, Count VI alleged that he penetrated her vagina with a purple sex toy, and Count VII alleged fondling or touching.

[12] The trial court appointed a public defender to represent Jones. During the pendency of the case, Jones filed multiple pro se pleadings and motions while represented by counsel. At some point, the trial court informed Jones that it did not allow bifurcated representation and that he was "close to being sanctioned." *Transcript Vol. II* at 65-66. The trial court told Jones that it would revoke pretrial good time credit days if he continued to make pro se filings while represented by counsel, citing *Zavodnik v. Harper,* 17 N.E.3d 259, 268 (Ind. 2014), as authority for doing so.[2] Approximately one week later, Jones made another pro se filing along with a "Letter to the Judge." *Appellant's Appendix Vol. III* at 160-61. In response, the trial court found Jones in direct contempt and deprived him of sixty days of good time credit. The trial court sanctioned Jones with the loss of more credit time on several other occasions in light of Jones's additional pro se filings.

---

[2] Under *Zavodnik,* a trial court may impose restrictions on a party for engaging in "abusive litigation practices that create confusion and put an enormous burden on the court, its staff, the clerk and opposing parties." 17 N.E.3d at 268. Such restrictions include—but are not limited to—striking pleadings under certain circumstances, limiting repetitive motions and the number of words and pages in filings, and limiting the number or length of exhibits. *Id.*

[13] Following a three-day jury trial that concluded on January 11, 2024, Jones was found guilty of child molesting on Counts II, IV, and VI—Level 1 felonies—and Count VII, a Level 4 felony. The jury found Jones not guilty on Counts I, III, and V. Jones remained incarcerated and prior to sentencing, the trial court granted Jones's motion for a determination of competency and ordered him to undergo a psychiatric examination.

[14] Thereafter, Jones filed a pro se "Sentencing Statement" and a pro se "second presentence investigation report." *Appellant's Appendix Vol. IV* at 164-188, 189-195. The trial court once again sanctioned Jones for his pro se filings and deprived him of an additional thirty days of good time credit.

[15] Jones was determined competent, and on October 10, 2024, the trial court held a sentencing hearing. The trial court identified as aggravating circumstances Jones's criminal history, the significant harm that Victim 1 suffered, the fact that Jones was in a position of trust, and Jones's history of drug and alcohol abuse. The trial court considered Jones's mental health a mitigating factor and sentenced him to consecutive sentences of forty years each on Counts II and IV, thirty years on Count VI ordered to run consecutively to Counts II and IV, and ten years, all suspended, on Count VII for an aggregate executed sentence of 110 years.

[16] The trial court's sentencing order and judgment of conviction further provided: "The Probation Department is directed to . . . subtract any time that the court deprived the defendant due to his violating court orders with regard to

continuing correspondence with the court." *Id.* at 218. The memorandum prepared by the Probation Department shows that "Jones has been deprived of 390 days of good time credit as of October 10, 2024." *Id.* at 220.

Jones now appeals.

## Discussion and Decision

### I. Sufficient Evidence

Jones claims that the evidence was insufficient to support his convictions. He argues that the convictions must be set aside under the incredible dubiosity rule because Victim 1's testimony was "inherently improbable or uncorroborated." *Appellant's Brief* at 26.

A challenge to the sufficiency of the evidence warrants a "deferential standard of review in which we 'neither reweigh the evidence nor judge witness credibility[.]'" *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). Instead, we respect the fact-finder's exclusive province to weigh conflicting evidence, *Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018), and consider only the probative evidence and reasonable inferences that support the judgment of the trier of fact. *Hall v. State*, 177 N.E.3d 1183, 1191 (Ind. 2021). We will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024). A conviction for child molesting may stand solely on the uncorroborated testimony of the victim. *See Baxter v. State,* 132 N.E.3d 1, 5 (Ind. Ct. App. 2019).

[20] To convict Jones of Level 1 felony child molest, the State was required to prove that Jones, when Victim 1 was a child under the age of fourteen, knowingly performed or submitted to sexual intercourse or other sexual conduct with her when he was at least twenty-one years of age. Ind. Code § 35-42-4-3(a)(1). To prove child molesting as a Level 4 felony, the State had to prove that Jones performed or submitted to fondling or touching of Victim 1 with the intent to arouse or satisfy the sexual desires of either himself or Victim 1. I.C. § 35-42-4-3(b). "Other sexual conduct" includes acts involving a sex organ of one person and the mouth of another person and the penetration of the sex organ of a person with an object. I.C. § 35-31.5-2-221.5. A finger is an object for the purposes of the child molesting statute. *Simmons v. State*, 746 N.E.2d 81, 86 (Ind. Ct. App. 2001), *trans. denied.* The female sex organ includes the external genitalia, and the slightest penetration of the female sex organ constitutes child molesting. *Boggs v. State*, 104 N.E.3d 1287, 1288-89 (Ind. 2018).

[21] Jones acknowledges that under the incredible dubiosity rule, "a court will impinge upon the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994). "Application of this rule is limited to cases . . . where a sole witness presents inherently contradictory testimony [that] is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Id.* Application of the incredible dubiosity rule is rare. *Fajardo v. State,* 859 N.E.2d 1201, 1208 (Ind. 2007).

[22] While Jones points to minor inconsistencies between Victim 1's deposition testimony and her trial testimony, including the manner in which Jones touched her and whether Jones got in the shower with her, a witness's trial testimony that contradicts earlier pretrial statements does not necessarily render the testimony incredibly dubious. *Murray v. State,* 761 N.E.2d 406, 409 (Ind. 2002).

[23] Victim 1 consistently testified at trial that Jones penetrated her vagina with sex toys, his fingers, tongue, and penis. Victim 1 also testified that Jones made her touch his penis with her hand and mouth and explained that Jones penetrated her vagina with his fingers while she was showering. Victim 1 further testified that Jones put "his tongue on [her] vaginal area" on at least one occasion while she was lying on her back wearing only a shirt. Victim 1 also explained how Jones used a "fake man part" that was "small and purple" that "felt like rubber" to penetrate her vagina while she laid on a mattress in his guest room. *Transcript Vol. IV* at 239-40, 243.

[24] In addition to Victim 1's testimony, the State presented circumstantial evidence supporting the allegation that Jones committed the charged offenses. Specifically, items matching the descriptions of the sex toys that Victim 1 described to the police were found at Jones's residence. Also, a sexual assault examination revealed that Victim 1's hymen was not intact and that she had contracted bacterial vaginosis—neither of which was common for a female her age.

[25] The incredible dubiosity rule does not apply in this case. Jones failed to show that Victim 1's testimony was inherently contradictory, and her testimony was corroborated by other testimony and circumstantial evidence. The evidence was sufficient to support Jones's convictions.

## II. Earned Credit Time

[26] Jones argues—and the State concedes—that the trial court improperly deprived him of earned good time credit. Jones claims that the trial court's sanction in revoking his credit time for filing "[pro se] correspondence and motions . . . despite being represented by counsel" was an abuse of discretion. *Appellant's Brief* at 32.

[27] Ind. Code § 35-50-6-3 provides that a defendant is entitled to credit time for each day spent in confinement awaiting trial or sentencing. When incarcerated in a penal facility, defendants may be deprived of good time credit for bad behavior and conduct violations, or if the court determines that a civil claim brought by a defendant is frivolous, unreasonable, or groundless. I.C. § 35-50-6-0.5; I.C. § 35-50-6-5. Pre-sentence jail time credit, however, is a matter of statutory right, and trial courts generally have no discretion in awarding or denying such credit. *Perry v. State,* 13 N.E.3d 909, 911 (Ind. Ct. App. 2014).

[28] Although the trial court cited *Zavodnik* as authority for denying Jones credit time for improperly filing pro se motions and other pleadings because he was represented by counsel, Jones is statutorily entitled to credit time while awaiting sentencing. Hence, the trial court was without discretion to deprive Jones of

the credit time as a sanction for filing pro se pleadings and motions while represented by counsel. We therefore remand this case to the trial court to calculate the correct amount of credit time to which Jones is entitled and issue a revised sentencing statement in accordance therewith.

## III. Inappropriate Sentence

[29] Jones claims that his 120-year aggregate sentence is inappropriate under Ind. Appellate Rule 7(B). Specifically, Jones argues that his sentence must be revised because of "his mental health history" and the "comparative sentences imposed in similar cases." *Appellant's Brief* at 7.

[30] We evaluate inappropriate sentence claims under the following well-settled standard of review:

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. App. R. 7(B). Our role in reviewing a sentence pursuant to Appellate Rule 7(B) "should be to attempt to leaven the outliers, and identify some guiding principles for the trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "The defendant bears the burden of persuading this court that his or her sentence is inappropriate." *Kunberger v. State*, 46 N.E.3d 966, 972 (Ind. Ct. App. 2015).

> "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in

a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

*Belcher v. State*, 138 N.E.3d 318, 328 (Ind. Ct. App. 2019), *trans. denied.*

[31] In considering the nature of the offense, we first look to the advisory sentence for the crime. *McHenry v. State*, 152 N.E.3d 41, 46 (Ind. Ct. App. 2020). When a sentence deviates from the advisory sentence, "we consider whether there is anything more or less egregious about the offense as committed by the defendant that distinguishes it from the typical offense accounted for by our legislature when it set the advisory sentence." *Madden v. State*, 162 N.E.3d 549, 564 (Ind. Ct. App. 2021). The sentence for a Level 1 felony ranges from twenty to forty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4(b). The sentence for a Level 4 felony ranges from two to twelve years with an advisory sentence of six years. I.C. § 35-50-2-5.5.

[32] Here, Jones was sentenced to forty years each on Counts II and IV and to thirty years on Count VI, all Level 1 felonies that were ordered to run consecutively to each other. The sentences on Counts II and IV were the maximum permitted under I.C. § 35-50-2-4(b), and the sentence on Count VI was the advisory sentence for a Level 1 felony. Jones was also sentenced to ten years on Count VII—four years above the advisory sentence for a Level 4 felony—all suspended to probation, for an aggregate executed sentence of 110 years.

[33] Here, the evidence established that Jones—whom Victim 1 considered a father figure—abused her multiple times over the course of nearly one year. Jones

penetrated Victim 1 vaginally with his finger, tongue, and sex toys in those incidents of abuse, and Victim 1 was traumatized to the point that she no longer wanted to bathe. That Jones occupied a position of trust, which he repeatedly abused, rendered Jones's offenses particularly egregious. *See, e.g.*, *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App. 2016) (holding that abusing a position of trust is, by itself, a valid aggravator that may support a maximum sentence), *trans. denied*. The nature of Jones's offenses does not render his sentence inappropriate.

[34] When examining Jones's character, we consider a wide range of factors, including his age, criminal history, background, and past rehabilitative efforts. *Harris v. State*, 165 N.E.3d 91, 100 (Ind. 2021). The significance of a criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007).

[35] The record shows that Jones has a lengthy criminal history. Specifically, Jones was convicted of criminal conversion and visiting a common nuisance in 1998, and he later violated the terms of his suspended sentence. Jones was convicted of failure to appear, criminal trespass, resisting law enforcement in 1999, and in 2005, he was convicted of dealing in cocaine and sentenced to twelve years with two years suspended. Jones's long and varied criminal history reflects poorly on his character. *See Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005) (criminal history reflects poorly on character because it reveals that a defendant has not

been deterred from criminal behavior). Although Jones has not been convicted of prior sexual offenses, he molested Victim 1 over a prolonged period of time.

[36] The trial court acknowledged Jones's mental health issues as a mitigating factor, and although Jones was diagnosed with bipolar disorder in 2003, he never sought mental health treatment for his condition. In light of Jones's decision not to seek treatment, his mental health issues do not significantly lessen his moral culpability. *See, e.g., Davis v. State,* 173 N.E.3d 700, 706-07 (Ind. Ct. App. 2021) (stating that the defendant's failure to seek treatment for known mental health condition did not support a sentencing revision), *abrogated in part on other grounds*. Moreover, Jones has not established a nexus between his mental health issues and the crimes he committed.

[37] Finally, although Jones compares his sentence to those imposed in *Couch v. State*, 977 N.E.2d 1013, 1017-18 (Ind. Ct. App. 2012), *trans. denied*, *Walters v. State*, 68 N.E.3d 1097, 1099 (Ind. Ct. App. 2017), *trans. denied,* and *Lavoie v. State*, 903 N.E.3d 135, 142 (Ind. Ct. App. 2009), those cases do not demonstrate that his sentence is inappropriate. For instance, the defendant in *Couch* pleaded guilty to the charged child molesting offenses and lacked a prior criminal history. 977 N.E.2d at 1017. The defendant in *Walters* did not molest his victim multiple times over the course of nearly a year, 68 N.E.3d at 1099, and the defendant in *Lavoie* was convicted on a single count of child molesting, along with additional offenses. 903 N.E.3d at 136. Because the appropriateness of a sentence depends on a "myriad of other factors that come to light in a given case," *Cardwell*, 895 N.E.2d at 1224, Jones has failed to

demonstrate that his sentence is inappropriate in light of the specific factors considered by the trial court that distinguished his offenses from those committed by the defendants in other cases. In short, Jones's sentence is not inappropriate and should not be revised.

[38] Affirmed in part, reversed in part, and remanded.

Pyle, J. and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Donald R. Shuler
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Kelly A. Loy
Assistant Section Chief for Criminal Appeals
Indianapolis, Indiana